# CHARLESTON.

### ENSMINGER v. PETERSON.

Submitted June 13, 1902.   Decided April 18, 1903.

1.  AGREEMENT.
    In a suit in equity to enforce the specific performance of the
    following agreement: "March 19, 1884.  This article of agree-
    ment made this day by and between Thomas Tucker, agent of
    W. F. Peterson the agent of George Fox of Philadelphia, Wit-
    nesseth; That the said Tucker sold a tract of land to Asberry
    Ensminger on the 12th day of September,, 1883, situated on
    the south side of the South Fork near Owen Talkinton.  Now it
    is agreed that said Ensminger has the right to take any other
    land owned by said Fox or to make his own location on said
    land owned by said Fox to transfer his former article and said
    Ensminger has to make location and report the same Isaac
    Morgan and said Ensminger has the rights on this or these
    lands as the former contract.
         Given under our hands and seals the day and year 'riten.'
                             Thomas Tucker, agent    (Seal.)
                             of G. Fox and W. F. Peterson.
                             N. A. Ensminger,      (Seal.)"
    The contract mentioned of September 12, 1883, not being
    produced nor the terms thereof sufficiently proved, the agree-
    ment of March 19, 1884, standing alone is too vague, indefinite
    and uncertain to be specifically enforced in a court of equity.
    (p. 331).

Appeal from Circuit Court, Wetzel County.

Bill by N. A. Ensminger and another against B. W. Peterson. Decree for defendant, and plaintiffs appeal.

*Affirmed.*

JACKSON V. BLAIR, for appellants.

HENRY M. RUSSELL, for appellee.

McWHORTER, PRESIDENT:

This is a suit in equity by N. A. Ensminger and H. L. Smith against B. Walker Peterson, vendee of Samuel M. Fox and George Fox, executors of the last will and testament of George Fox, M. D., to enforce the specific performance of a contract in writing claimed to have been made by Thomas Tucker, agent of George Fox M. D. and W. F. Peterson, dated March 19, 1884. Dr. George Fox lived in Philadelphia and was the owner of several large tracts of land in Wetzel, Tyler and Marion Counties now West Virginia. On the 20th day of November, 1837, the said George Fox M. D. executed to William F. Peterson of Wheeling a power of attorney "To grant, bargain and sell any parts or parcels of all those certain tracts of land situate in Tyler County in the State of Virginia, four of the said tracts containing two thousand acres each, one tract containing eight thousand acres and the other tract containing seven thousand acres, with the appurtenances and all my estate, right, title and interest therein to such person or persons and for such price and prices as he shall deem proper," and to make and execute all necessary deeds of conveyance etc.; and generally to have full charge of all his said lands. The said Peterson under said power of attorney took charge of said lands and had in his employ one Thomas Tucker who acted as agent for said Peterson, showing the lands to purchasers and in selling the same. Said Dr. Fox executed his will dated May 20, 1878, and which was admitted to probate on January 8, 1883, by which he appointed his sons, Samuel M. and George Fox, executors, and in his will he authorized his executors and the survivor and successors of them to grant, sell and convey in fee simple any portion or portions of his real estate either at public or private sale at their discretion. On the 1st day of June, 1889, Samuel M. Fox and George Fox, executors of the last will of George Fox, M. D., in consideration of the sum of

$1,890.39 of taxes theretofore assessed against them and paid by B. Walker Peterson at their request, and the further sum of $4,000.00 paid to them by said Peterson conveyed to said Peterson all their lands then lying in the counties of Marion and Wetzel or either of them conveyed by Benjamin Wyncoop to Samuel Mickel Fox by deed dated the 10th of September, 1791, and recorded in Ohio County together with all the right, title and interest of the said George Fox, deceased, in and to the same and all their right, title and interest therein as executors and assigned and transferred to said B. Walker Peterson (without recourse to them) all contracts of every kind whatsoever in which they were interested relating to the lands or any of them with the right to sell and recover on the same, but there are excepted from said conveyance such portions of said lands as had already been granted or otherwise disposed of by them or by said George Fox, M. D., in his lifetime or by the said Samuel Mickel Fox, the elder, in his lifetime or by the executors of his will prior to their conveyance to the said George Fox, M. D., other than lands under contract "And as to lands under contract, they grant their interest in the same as aforesaid and assign the contracts, and the said party of the second part by accepting this conveyance assumes all the responsibilities of the said parties of the first part under the said contracts." The contract which the court was asked to require to be specifically performed in this case is as follows: "March 19, 1884. This article of agreement made this day by and between Thomas Tucker, agent of W. F. Peterson the agent of George Fox of Philadelphia, Witnesseth; That the said Tucker sold a tract of land to Asbury Ensminger on the 12th day of September, 1883, situated on the south side of the South Fork near Owen Talkinton. Now it is agreed that said Ensminger has the right to take any other land owned by said Fox or to make his own location on said land owned by said Fox to transfer his former article and said Ensminger has to make location and report the same Isaac Morgan and said Ensminger has the rights on this or these lands as the former contract.

Given under our hands and seals the day and year 'riten.'

THOMAS TUCKER, Agent, (Seal.)
of G. Fox and W. F. PETERSON.
N. A. ENSMINGER, (Seal.)

The bill alleges that Thomas Tucker on or about the 12th day of September, 1883, by a writing of that date duly signed by him and the plaintiff N. A. Ensminger agreed to and did sell to the plaintiff Ensminger a certain boundary of said land situate, lying and being on the south side of the South fork of Fishing Creek in the county of Wetzel near to and adjoining land of Owen Talkington supposed to contain about 125 acres at the sum and price of $5.00 per acre of which about $50.00 was paid cash and the residue was to be paid in four annual payments of about $143.75 per year with interest; that on the day the sale and purchase of said land was made the boundaries of said land were marked and designated and shown to Ensminger by Tucker, and Ensminger entered into actual possession and control of the same immediately thereafter cleared a portion of the land and erected a dwelling house and other permanent and valuable improvements thereon and so remained in actual possession and control until the time of the said purchase contract of March 19, 1884; that on the 12th of June, 1883, Ensminger paid Tucker, agent for W. F. Peterson, $10.00 on account of said land and filed said Tucker's receipt for the same with his bill and that all this was done with the full knowledge, consent and approval of the owner of said land and of said B. Walker Peterson, who was at that time in charge of his father's business and was acting in the place of his father as the representative of the owner of said land and the said Tucker acting for him turned over to the defendant B. Walker Peterson all the said purchase money paid by said Ensminger to Tucker for said land, and alleging that Tucker kept and held the said written contract and turned over and delivered the same to said B. Walker Peterson and that the same was then in the custody and control of said Peterson; that on the 19th of March, 1884, Ensminger surrendered the possession of the land to Tucker who thereupon sold the same to Owen Talkington and that afterwards defendant B. Walker Peterson made a deed therefor to Talkington, carrying out and executing the contract between Tucker and Talkington, thus ratifying, conveying and approving Tucker's action in the premises; that immediately after Ensminger surrendered possession of the land and in pursuance of the agreement of March 19th, 1884, Ensminger did with the knowledge and consent of said Tucker

and the owner of said land select and locate certain other tract or boundary from within the lands then owned by the said George Fox or those holding under him and marked and designated the boundaries thereof and reported the same to Isaac Morgan and entered into actual possession and control of the land so selected, located and taken in exchange and has continued in the possession theerof ever since and was still in the actual possession as a tenant of and under Henry L. Smith, to whom plaintiff Ensminger had sold the same; that plaintiff Ensminger relying upon his right to have said agreement between him and Tucker, agent, specifically executed, executed an oil lease upon said lands to the plaintiff Henry L. Smith, bearing date the —————— day of ——————, 1892, for the term of five years; that said Smith afterwards assigned the lease to the South Penn Oil Co., and afterwards by agreement in writing bearing date the 22d day of December, 1892, plaintiff, Ensminger, assigned, set over and delivered to plaintiff, H. L. Smith, all his right, title and interest in said land under the agreement of the 19th day of March, 1884, with all the benefits of said lease for oil and gas purposes; that a part of the consideration for said transfer plaintiff Smith was to pay the balance of the purchase money due to defendant B. Walker Peterson under the contract of Tucker; that said purchase money and interest included then amounted to $575.00. Tender was made in the bill of the said purchase money and it was alleged that it had been made to B. Walker Peterson who declined to accept the money but promised and assured Smith that he would make the matter all right in a few days and afterwards promised to make and deliver to said Smith a deed for said parcel of land; but that said Peterson now refused to so make and deliver such deed; that he never refused to perform said agreements or refused to make and deliver the deed until after it was discovered that the said land was likely to prove valuable for oil and gas purposes and then said Peterson offered to make a deed for said land if plaintiff would allow him to reserve a portion of the oil that might be produced and saved from said land.

It was also alleged that the deed from the executors to Peterson had the effect to vest the legal title to the said 125 acres in said Peterson, but that he holds the same as trustee for plain-

tiffs and should be required to convey the same to plaintiffs;
that it would work a fraud on the plaintiffs and each of them
and cause each of them irreparable injury, damage and loss not
to be able to have said agreement of March 19th, made by
Tucker, specifically executed; that immediately after Smith
purchased said land from Ensminger he entered into the actual
possession and control thereof and erected thereon a frame
dwelling-house and made other permanent and valuable im-
provements thereon and fenced and enclosed a portion of said
land, all of which was done with the full knowledge, consent and
approval of the said B. Walker Peterson and prayed for specific
execution of said agreement; that B. Walker Peterson be re-
quired to accept the purchase money due therefor which was
then paid into court and be required to execute and deliver to
Ensminger or his vendee, Smith, a deed for said 125 acres of
land; that the defendant South Penn Oil Co. be required to
deliver the one-eighth of the oil produced and to be produced
from said land to the credit of plaintiff Smith; that
a receiver be appointed to take charge of the roy-
alty and that the South Penn Oil Co. be restrained from de-
livering the royalty from the lease on the said land to said de-
fendant, Peterson; and for general relief. The bill was sworn
to and injunction was granted as prayed for. Defendant Pet-
erson tendered his answer denying the agency of Tucker after
the death of George Fox, M. D., which occurred about the last
of the year 1882, and the death of the elder William F. Peter-
son, who had been the attorney in-fact for said George Fox, and
denying that Tucker had made the agreement of September
12, 1883, and in fact denying all the material allegations of
the bill. The South Penn Oil Co. filed its answer averring that
it had no interest in the litigation between plaintiffs and Peter-
son and was ready to pay the royalty of oil from the production
on said lands to either of the parties that the court might as-
certain to be entitled to receive it. On the 15th of September,
1896, the cause came on to be heard on motion of defendant to
dissolve the injunction, when the answer of the defendant was
filed and general replication thereto and the motion to dissolve
was continued for the taking of depositions. At the October
rules, 1897, plaintiffs filed an amended bill making new parties
defendant, alleging that since filing their original bill they

had learned that B. Walker Peterson purchased the land from the executors for himself and William F. Peterson, his brother, and that under the said purchase B. Walker Peterson held one-half thereof in trust for his said brother; that on the 18th of May, 1895, said B. Walker Peterson executed to his said brother a deed in the nature of a declaration of trust acknowledging the joint interest of his brother in the land and in the contracts in the original purchase; that plaintiffs were not aware of the execution of said deed at the time of the filing of said bill; that said W. F. Peterson died intestate, leaving his brother, B. W. Peterson, his sole heir at law and that as stated in said original bill said William F. Peterson in his lifetime and acting as the agent of said George Fox, M. D., in his lifetime and for his executor after his death, and that much of the business as shown in the original bill was done by Thomas Tucker acting for the said George Fox, M. D., deceased, and said executors through their said agent, William F. Peterson; that said Tucker made many sales of the Fox lands in said Wetzel county as representative of said George Fox and the executors after his death through said agent, William F. Peterson; that William F. Peterson knew of every transaction about said land made by said Tucker and every sale made by him for any portion of said Fox lands, and that settlements were frequently made with said Thomas Tucker by both William F. Peterson and B. Walker Peterson; that after said B. Walker Peterson obtained the said deed of June 1, 1889, final settlement was made by and between said Thomas Tucker and the said William F. Peterson and B. Walker Peterson, and claimed to file as an exhibit with their said amended bill a copy of such settlements; and alleged that both William F. and B. Walker Peterson knew of said Tucker sale to plaintiff Ensminger and acquiesced therein and agreed thereto, and plaintiffs adopted all the allegations contained in the original bill.

Defendant B. Walker Peterson filed his answer to said amended bill admitting the interest of his brother in the purchase of the lands from the executors and the execution by him of the deed of May 18, 1895, therefor to his brother, W. F. Peterson; denied that his said brother had acted as agent for George Fox, M. D., in his lifetime or for his executors after his death in respect to any of the said lands, or that said exe-

cutors made sales through his said brother as agent 'or that said Thomas Tucker made sales for him or that his brother or himself knew of the transaction of said Tucker, or that settlements were made frequently with said Tucker in respect to any portions of the said Fox land with respondent and his brother or either of them, and that the exhibit professed to have been filed with the amended bill showing such settlement was not so filed nor was such settlement made.

The cause came on to be heard on the 26th day of May, 1898, on the bill and exhibits, the answers and replications and the depositions and upon the exceptions of defendant Peterson to depositions and certain questions propounded and upon motion to dissolve the injunction; the court overruled the exceptions of the defendant to plaintiff's depositions and held that the plaintiffs were not entitled to the relief prayed for, and dissolved the injunction and dismissed the bill and decreed costs for defendant Peterson against the plaintiffs. The plaintiffs, Ensminger and Smith appealed from said decree and say that the court erred in dissolving plaintiff's injunction and denying the relief asked for and dismissing their bill.

The principal question involved is whether the writing, the specific execution of which is sought to be enforced in this case, is sufficient to take it out of the statute of frauds. In *White* v. *Core,* 20 W. Va. 272. (Syl. pt. 2), it is held: "Every agreement required by the statute of frauds to be in writing must be certain in itself or capable of being made so by reference to something else, whereby the terms can be ascertained with reasonable certainty. And in contracts for the sale of lands the court may go outside of the writing for the purpose of identifying and ascertaining the land sold, where general words of description capable of being made certain are used in the writing;" and in *Shelton* v. *Church,* 10 Mo. 774, it is held that: "A contract for the conveyance of so much of any lands the obligor might own, will not be enforced in equity. A specific performance will only be decreed when a specific thing is agreed to be conveyed;" and in *Dobson* v. *Litton,* 5 Coldwell 616, it is held: "Courts of equity will not decree a specific performance of a written contract unless its terms can be clearly made out in its essential particulars from the writing itself, or by a reference contained in it to some other writing;" and in *McGuire* v.

*Stevens,* 42 Miss. 734, "Every agreement which is required by
the statute of frauds to be in writing, must be certain or capa-
ble of being made certain by reference to something else whereby
the terms and subject matter of the agreement can be ascertained
with reasonable precision, otherwise it cannot be carried into
effect," and further "The specific performance of a contract re-
specting land will not be decreed unless the written instrument
in reference thereto identifies the land or furnishes the means
of identifying it with sufficient certainty," and in this last.case
the court goes so far as to say that "Part performance will not
take a parol sale of lands out of the statute of frauds, the
statute contains no exceptions in regard to such contracts, and
it is not for us to create exceptions when none exist in the
statute." *Holmes* v. *Evans,* 28 Miss. 247; *Miller* v. *Campbell,*
52 Ind. 125; *Baldwin* v. *Kerlin,* 46 Ind. 426; *Johnson* v. *Craig,*
21 Ark. 533.

The contract sought to be enforced in case at bar fails to
mention any specific land proposed to be sold, but refers to
another contract which purports to have been dated on the 12th
day of September, 1883, by which Thomas Tucker, agent, sold
a tract of land to the plaintiff, Ensminger, "Situated on the
south side of the South Fork near near Owen Talkington," and
the contract or agreement here sued upon proposed   to give
Ensminger "The right to take any other land owned by said
Fox or to make his own location on said land owned by said
Fox to transfer his former article and said Ensminger has to
make location and report the same Isaac Morgan and said Ens-
minger has the rights on this or these lands as the former con-
tract." George Fox, who was then deceased, had been the owner
of large boundaries of land containing in the aggregate nearly
twenty thousand acres and this contract made by the agent long
after the death of his principal proposes to give the purchaser
the right to take any land owned by the said Fox, to be located
where the purchaser might desire without specifying in which
of- the various large tracts the same might be located, or on
what waters, or any other designation as to where it should be
located.   There are no general words of description capable of
being made certain used in the contract sued upon, as required
in *White* v. *Core, supra.*   In *Preston* v. *Preston,* 95 U. S. 200,
it is held that: "A contract for the conveyance of lands which

a court of equity will specifically enforce must be certain in its terms and the certainty required has reference both to the description of the property and the estate to be conveyed. Accordingly when the property could not be identified specific performance was denied." In *Westfall* v. *Cottrills*, 24 W. Va. 763, it is held: "A parol contract to sell and convey forty acres of the Spring Fork end of my tract of one hundred and forty-seven acres on Beech Fork in Calhoun county is too vague and indefinite to be specifically enforced." *Blankenship* v. *Spencer*, 31 W. Va. 510, where it is held that parol contract for the sale of land described as "A certain piece of land containing sixty-seven and one-half acres being the lower end of a certain survey sold and conveyed to S. by W. and adjoining the lands of H. and of R. in the district of F. and county of G. and State of West Virginia," and shown by extrinsic evidence to contain one hundred and seventeen acres, it was held that such contract was too vague and indefinite to be enforced in a court of equity. It is there further held, that a bill to enforce specific performance on the ground of part performance sufficient to take it out of the statute of frauds, "Would noly lie where the contract could be enforced without such part performance if the same or some memorandum or note thereof had been in writing and signed by the party to be charged thereby or his agent."

It is attempted on the part of the plaintiffs to cure the uncertainty in the contract of March 19, 1884, by its reference to the contract of September 12, 1883, made by the same agent for the sale of land on the south side of the South Fork near Owen Talkington which latter contract is neither produced nor clearly proved. Plaintiff, Ensminger, says that contract was by him surrendered to Thomas Tucker at the time of making the subsequent contract of March, 19, 1884, and that he had not seen it since. Plaintiffs in this bill allege that by the contract of September 12, 1883, made with Tucker, and which contract was taken up by Tucker on the day that latter contract of March 19, 1884, was entered into, the boundary of land purchased by him was supposed to contain about one hundred and twenty-five acres, at the sum and price of $5.00 per acre; of which about $50.00 was paid cash and the residue was to be paid in four annual payments of about $143.75 per year. with interest, while plaintiff, Ensminger, in his deposition, says that

under the contract of September 12, 1883, he was to pay for the land $5.00 per acre and pay it in four payments, and that he paid $10.00 in advance on the day of the date of the contract and paid $10.00 afterwards to William Reed on a written order and afterward fed a cow three months in winter on his order which amounted to $10.00. It does not appear from his deposition when the payments were to be made, whether monthly, quarterly, annually, or otherwise, nor the amounts, and he further states that there were supposed to be forty-five or fifty acres in the boundary; hence the price could not have exceeded $250.00; so that the residue could not have exceeded four payments of some $60.00 each. In *Mathews* v. *Jarrett*, 20 W. Va. 415, the Court cites with approval the case of *Preston* v. *Preston, supra,* and says: "Extrinsic evidence is only admissible to a very limited extent and for purposes well defined and limited. It cannot be used to supply any defect or omission in the terms of the written contract; but is strictly confined, in cases where no fraud, mistake or other equitable incident of a like character is alleged, to the function of explanation and of exhibiting the surrounding circumstances in the manner and only to the same extent that such evidence is permissible in the interpretation of all other written instruments," and cites *Parkhurst* v. *Van-Cortlandt,* Johns. Chy. 15; *Reed* v. *Hornback,* 4 J. J. Marsh. 377; *Graham* v. *Hernden,* 5 Munf. 185. It is insisted by appellants that their location is more definite than that in the conveyance under which Peterson, the appellee claims title. This cannot be, because no land is described in the contract of March 19, 1884, while the conveyance by the executors to Peterson of June 1, 1889, was of "All the lands now lying in the counties of Marion and Wetzel or in either of them, in the State of West Virginia, which were conveyed by Benjamin Wyncoop to Samuel Mickel Fox, by deed dated September 19, 1791," giving the place of the recording of the same. Peterson's deed is based upon the old deed which describes the lands and the records show what portions thereof, have been alienated.

In support of their proposition appellants quote from *White* v. *Core,,* cited, where it is said: "In contracts for the sale of lands the court may go outside of the writing for the purpose of identifying and ascertaining the land sold." This is qualified by the further statement in that connection, "And a contract to

sell 'my farm' or 'the mill' is sufficiently certain if it appears that the vendor has but one such building or tract of land," so that the contract must be specific enough to identify the property intended to be sold.     Appellants also cite *Donnally* v. *Parker,* 5 W. Va. 301; *Bentley* v. *McKibben,* 6 W. Va. 283; *Nash* v. *Jones,* 41 W. Va. 769; *Coal and Coke Co.* v. *Fleming,* 42 W. Va. 538; all of which were for the enforcement of specific performance of contracts which were definite and certain, no such questions arose as are involved in case at bar.     In *Blair* v. *Snodgrass,* 1 Sneed 1, it is held:     "It is a well settled rule under the statute of frauds that where divers writings are relied upon to elucidate a contract for the sale of land parol proof is not admissible to correct or explain them, or to show that the several writings relate to the same transaction;" and it is there said: "It is plainly the law that the precise meaning of the parties must be clearly ascertained from the instruments themselves, to the exclusion of extrinsic evidence; and the decisions upon this point are substantially the same both at law and in equity," citing *Brettel* v. *Williams,* 4 Excheq. 623; *Saunderson* v. *Jackson,* 2 B. & P. 338; *Western* v. *Russell,* 3 Bes. & P. 138; *Foster* v. *Hale,* 3 Sumn. 696; *Allen* v. *Bennett,* 3 Taunt. 169; *Ide* v. *Stanborn,* 15 Vern. 685.     There is a large mass of testimony taken and filed in the case touching the possession of the plaintiff of land under the said contract which is very conflicting. There are many exceptions taken to the depositions of plaintiffs by the defendant's counsel, and to certain questions and answers specifically called to the attention of the court; but the exceptions were all overruled by the court, which would give plaintiffs the benefit of all their testimony in the consideration of the case by the court and if the court erred in any of its rulings on said exceptions the error was in favor of plaintiffs.     The evidence relating to the agency of the said Tucker for the defendant Peterson, was also contradictory, but I deem the question of agency as immaterial even though it were well established by the evidence, as the contract sought to be enforced specifically is too vague and uncertain to be enforced by a court of equity and the court did not err in refusing the relief prayed for.

The decree is therefore affirmed.

*Affirmed.*