[No. 14502. Department One. May 9, 1918.]

N. A. NELSON et al., Appellants, v. W. H. DAVIS et al., Respondents.[1]

FRAUDS, STATUTE OF—SALE OF LAND—MEMORANDUM—DESCRIPTION —SUFFICIENCY. An offer to exchange "¾ of an acre on Bridge Street" in a certain city fails to satisfy the statute of frauds in that it contains no sufficient description of the land.

ESCROWS—AGREEMENT—SUFFICIENCY—RETAINING CONTROL OF DEED. A valid escrow agreement is not shown by the fact that parties contemplating an exchange of properties executed deeds and left them with the agent as a matter of convenience pending an inspection and final decision as to whether an offer made would be accepted, where the depositor's deed was not to be delivered until the agent was advised of such acceptance; since the depositor did not part with control of the deed.

SAME—PART PERFORMANCE—TAKING POSSESSION. Part performance, taking the case out of the operation of the statute of frauds, is not shown by the fact that the parties were given the key for the purpose of inspection, and remained only a reasonable time for that purpose.

EXCHANGE OF PROPERTY—IMPROVEMENTS—REIMBURSEMENT. Parties given permissive possession pending inspection and acceptance of an offer to exchange properties, which failed of consummation, ac-

[1] Reported in 172 Pac. 1178.

quire no rights by voluntary improvements and payment of interest, especially where they deprived the owners of the use of their property for a long time.

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered March 15, 1917, upon findings in favor of the defendants, in an action for equitable relief, tried to the court. Affirmed.

*Ben F. Tweedy* and *Elmer E. Halsey,* for appellants.

*J. Webster Hancox* and *E. J. Doyle,* for respondents.

PARKER, J.—The plaintiffs, Nelson and wife, seek delivery of a deed which they claim was deposited for them in escrow with the defendant Wallace by the defendants Maxum and wife, which deed was signed and acknowledged by Maxum and wife, purporting to convey to Nelson and wife land in Clarkston, Asotin county, in this state. The plaintiffs also seek to quiet title to the land in themselves as against the claims of the defendants Davis and wife and the interveners, Witherby and wife, grantees of Maxum and wife. Trial in the superior court for Asotin county resulted in findings and judgment in favor of the defendants, from which the plaintiffs have appealed to this court.

The contentions of counsel for appellants are, in substance, that the deed in question was deposited for them by the Maxums in escrow with Wallace; that the conditions of the escrow agreement have been fully performed, entitling them to delivery of the deed; and that the facts shown are such as to render the defendant and interveners, grantees of the Maxums, purchasers with notice of appellants' rights in the premises. The contentions of counsel for respondents are, in substance, that there never was any valid, binding contract for the conveyance of the land, nor any valid and binding escrow agreement as claimed by appel-

lants, and that the grantees of the Maxums are, in any event, innocent purchasers for value. Our conclusion renders it necessary for us to notice only the question of appellants' claim of right to the delivery of the deed as against the defendants Maxum.

Early in June, 1915, negotiations were commenced looking to the exchange of the land of the Maxums, situated in Clarkston, Asotin county, in this state, for a lot and personal property consisting of a bakery plant thereon of the Nelsons, situated in Wendell, Gooding county, Idaho. These negotiations were conducted by the husbands, assisted by the defendant Wallace, a real estate agent at Lewiston, Idaho, and resulted in the signing of a writing as follows:

"Offer to Exchange.

"I hereby offer to exchange my property described as follows: One lot and store building in Wenda(e)ll, Idaho, in the county of Gooding, state of Idaho, for the property of Mr. L. V. Maxum, described as follows: ¾ of an acre on Bridge street in Clarkston, in the county of Asotin, state of Washington. Each party is to furnish an abstract showing good title and execute a warranty deed or contract for warranty deed. Also each party is to have a reasonable time for furnishing an abstract, examination of title, and for closing the deal. Also each party acknowledges the receipt of $1 from the other as part payment on these properties.

"This proposition is to be accepted by Mr. L. V. Maxum within eight days from this 9th day of June, 1915.                        (Signed) N. A. Nelson.

"I hereby accept the above proposition this 9th day of June, 1915, providing the statement from the bank at Wenda(e)ll, Idaho, is satisfactory and according to the description given me by Mr. N. A. Nelson.

"(Signed) L. V. Maxum."

The Nelsons had seen and examined the Clarkston property, which is situated a short distance from Lewiston, while the Maxums were wholly unacquainted

with the Wendell property, which is situated in Southern Idaho, a long distance from Lewiston. There was no attempt to make any written contract relating to the personal property to be exchanged with the Wendell lot, though Nelson made a rough statement in writing in a separate paper touching the nature of the personal property. The bank at Wendell was communicated with by mail, bringing an answer which proved unsatisfactory to the Maxums. This would have put an end to the trade had no further negotiations been had. However, Nelson insisted on the Maxums going to Wendell and examining the property for themselves. It was then orally agreed that the parties should sign and acknowledge deeds to their respective properties and leave the deeds with Wallace to be delivered by him, should the Maxums, after going to Wendell and examining the property there and finding it satisfactory, write to Wallace that they were willing to consummate the exchange and authorize him to deliver their deed to the Nelsons upon receiving from them their deed for the Wendell property. Deeds were signed, acknowledged and left with Wallace accordingly. Maxum then started overland by team and wagon to Wendell, his wife preceding him by train. About the time of the departure of the Maxums, the Nelsons moved onto the Clarkston property. Whether it was with the consent of the Muxums is a matter of dispute between them, but that it was not in consummation of the exchange, we think it quite clear from the evidence. When the Maxums arrived at Wendell, they immediately examined the Nelson property there, and being dissatisfied with it, promptly wrote to Wallace advising him of that fact, in effect declining to complete the exchange, and warning him not to deliver their deed to the Nelsons. It is apparent that the Nelsons

were promptly advised of this decision on the part of the Maxums.

Looking to the agreement of June 9, 1915, as evidenced by the writing above quoted, it seems plainly to fall far short of satisfying our statute of frauds as a contract to convey real property, in that no sufficient description of any real property appears therein. *Rogers v. Lippy,* 99 Wash. 312, 169 Pac. 858; *Nance v. Valentine,* 99 Wash. 323, 169 Pac. 862. It also seems plain that this writing does not evidence the meeting of the minds of the parties except as to matters merely preliminary to an ultimate exchange of the properties. It also seems plain from the conceded facts that this writing in no event evidences the entire agreement between the parties, since it makes no mention of any personal property, which plainly was contemplated to become part of the property to be exchanged. So whatever the agreement was, both as to the exchange of the properties and as to the leaving of the deeds with Wallace, claimed by the Nelsons to have been in pursuance of an escrow agreement, it is, in law, only an oral agreement. 13 C. J. 246.

Conceding, for argument's sake, that an escrow agreement for the delivery of a deed conveying real property may rest in parol where there is no valid written contract for the conveyance of real property, which, however, seems doubtful *(Nichols v. Oppermann,* 6 Wash. 618, 34 Pac. 162; *Manning v. Foster,* 49 Wash. 541, 96 Pac. 233, 126 Am. St. 876, 18 L. R. A. (N. S.) 337; *King v. Upper,* 57 Wash. 130, 106 Pac. 612, 1135, 31 L. R. A. (N. S.) 606), we are of the opinion that the evidence does not warrant the conclusion that there was any meeting of the minds of the Nelsons and the Maxums constituting in law an escrow agreement. We see nothing in the understanding arrived at between

the parties when the deeds were left with Wallace, other than that the deeds were left with him as a mere matter of convenience pending the final decision of the Maxums as to whether they would consummate the contemplated exchange, they being privileged to refuse to consummate it upon the inspection of the Wendell property, which at that time, as we have noticed, they had never seen. In other words, the Maxums did not, in placing their deed in the hands of Wallace, part with the control of it with a view of having it delivered to the Nelsons upon their performing some specified, agreed condition entitling them to have it delivered. The law of escrow agreements is well stated by the learned editors in 10 R. C. L. 626 as follows:

"Where the possession of the depositary is subject to the control of the depositor, an instrument cannot be said to be delivered, and it is not an escrow. While as will be seen, the depositor's right of possession may return if the specified event does not happen, or the conditions imposed are not performed, yet to constitute an instrument an escrow it is essential that the deposit of it should be in the meantime irrevocable; that is, that when the instrument is placed in the hands of the depositary, it should be intended to pass beyond the control of the depositor, and that he should actually part with all present or temporary right of possession and control over it. In case the deposit is made in furtherance of a contract between the parties, the contract must be so nearly complete that it remains only for the grantee or obligee or another person to perform the required condition, or for the event to happen, to have the instrument take effect according to its import."

This deed was not beyond the recall of the Maxums. Its delivery was not dependent upon the happening of an event beyond the control of the Maxums, but its delivery was dependent wholly upon the determination of the Maxums as to whether they would complete the exchange after their inspection of the Wendell property.

Our recent decision in *Rhines v. Young,* 97 Wash. 437, 166 Pac. 642, while not dealing with an escrow agreement, supports this conclusion. Counsel for appellants place some reliance upon our decision in *Bahrs v. Runkle,* 79 Wash. 45, 139 Pac. 637. In that case, while the plaintiff was attempting to enforce an escrow agreement, there was no question as to the validity or binding force of the escrow agreement as such, but the real controversy was over the question of rescission of the entire contract, including the escrow agreement, upon the ground of fraud.

Some contention is made in appellants' behalf rested upon the theory that the Nelsons took possession of the Clarkston property and the Maxums took possession of the Wendell property. We think the record does not warrant the conclusion that the Nelsons took possession of the Clarkston land with any understanding whatever on the part of any of the parties that the taking of such possession was in consummation of the exchange. Their possession was, in no event, anything more than merely permissive on the part of the Maxums, with the understanding that such possession was to be surrendered should the Maxums elect not to make the exchange. We think the Maxums did not take possession of the Wendell property in the sense that their acts could be construed as a consummation of the trade. It does appear that they obtained from the agent of the Nelsons at Wendell the key to the property and went upon the premises, but only for such reasonable time as would enable them to properly inspect them and reach a decision as to whether they would consummate the trade. Their acts in this respect covered a very short period of time and, we think, plainly were not such as evidenced an intent on their part to retain possession in consummation of the exchange.

Some contention is made in appellants' behalf rested upon the fact that the Nelsons, after going upon the Clarkston land, made some improvements thereon, and also paid an installment of interest upon a mortgage thereon. We are convinced, however, that this was wholly voluntary on their part, and that they were not induced to make any such improvements or payment by any act of the Maxums. This was not an issue upon the trial, in any event, and if it should be considered as having been an issue, we are satisfied that good conscience and equity would not require the Maxums to reimburse the Nelsons therefor, in view of the long time that the Nelsons have remained in possession depriving the Maxums of the use of the land.

Respondents have moved to dismiss the appeal because the appellants have not prepared a proper abstract, the evidence covering somewhat more than one hundred pages. While we think the form of the abstract as prepared by counsel for appellants is subject to some criticism, we have concluded to not dismiss the appeal, but dispose of the case on the merits, which leads to the same result in so far as the ultimate determination of the controversy is concerned.

The judgment is affirmed.

ELLIS, C. J., WEBSTER, MAIN, and FULLERTON, JJ., concur.