# NOLAND v. HAYWOOD.

(No. 1803; July 5, 1933; 23 Pac. (2d) 845).

The cause was submitted for the appellant on the brief of *Louis J. O'Marr,* of Sheridan, Wyoming.

The cause was submitted for respondent on the brief of *John G. Hutton* and *P. S. Garbutt* of Sheridan Wyoming.

RINER, Justice.

The District Court of Sheridan County declined to order the specific performance of an alleged contract for the exchange of certain property at the suit of the plaintiff and appellant, and, upon the close of his evidence, sustained the defendant's and respondent's

motion for judgment in her favor. In the judgment thereafter entered, it was found by the court, among other things, that

"the plaintiff's said cause is based upon an alleged agreement in writing made between plaintiff and defendant for the sale of real estate; that said alleged agreement in writing is insufficiently supported by a memorandum so indefinite and uncertain and incomplete in its terms that the intent of said memorandum is not clearly ascertained; and that the cause alleged by the plaintiff is within the operation of the Statute of Frauds, being Section 101 of Chapter 47 of the Revised Statutes of Wyoming, 1931; and that the said memorandum is insufficient to satisfy the said Statute of Frauds and is void under such statute."

It was accordingly adjudged and decreed that the prayer of the plaintiff's petition for the relief aforesaid, in every particular be denied. This proceeding, by direct appeal, has been prosecuted to review the record and this judgment in the case.

The written agreement relied on by the plaintiff reads as follows:

"Sheridan, Wyo.,

Dec. 2, 1931.

This Agreement Made between Edna E. Haywood and Fred Noland.

Edna E. Haywood agrees to furnish and deliver to Fred Noland Clear Title to 280 acres of Land on Clear Creek in Township 54—Range 79 To be free from all debts Except $37.62 to E. K. Morrow for fence repair Which is to Be Paid by Fred Noland.

Fred Noland Agrees to deliver a Clear Title to Property located in Sheridan, Wyo. at 9-N-Vale Ave. Including all furniture title to be Clear from all debts. Also to deliver 375 shares of R and D Oil stock.

Both Places Mentioned are in Sheridan Co. And Each party are to pay last 1-2 of taxes for year 1931 on places purchased.

This agreement Agreed to By Both Parties.

(Signed)

Edna E. Haywood,

Fred Noland"

The controlling question argued and submitted for determination is whether the written memorandum of the parties quoted above sufficiently described the properties to be exchanged, so as to comply with the requirements of our Statute of Frauds (Wyo. Rev. St. 1931, § 47-101) and to permit the specific performance of the agreement undertaken to be evidenced thereby. The section referred to, so far as material here, declares that:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith. * * *

Fifth—Every agreement or contract for the sale of real estate, or the lease thereof, for more than one year."

In aid of our solution of this question, it may be observed that this court has already said, in Freeburgh v. Lamoureux, 15 Wyo. 22, 33, 85 P. 1054, 1055, that:

"To warrant a court of equity in requiring the specific performance of a contract, the contract 'must be so certain that the court can require to be done the specific thing agreed to be done.' (Godschalk v. Fulmer, 176 Ill., 64, 51 N. E. 852). And where the contract is for the conveyance of land the description 'must be sufficient to fix and comprehend the property which is the subject of the transaction, so that with the assistance of external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended and to the exclusion of all other property.'

(Ryan v. U. S., 136 U. S., 68, 10 S. Ct. 913, 34 L. Ed. 447). But external evidence is inadmissible for the double purpose of describing the land and then applying the description. (Halsell v. Renfrow, 14 Okla., 674, 78 Pac. 118 (2 Ann. Cas. 286), and cases there cited.)"

Speaking of the nature of the memorandum required, in order to comply with the provisions of the statute of frauds relative to sales of personal property (Wyo. Comp. St. 1910, § 3752; Wyo. Rev. St. 1931 § 98-202), it was said, in Burley-Winter Pottery Co. v. Onken Bros. & West Co., 26 Wyo. 287, 291, 292, 183 P. 747, 749, that:

"The correct rule for the construction of such memorandum, as we understand it to be, is well stated in Waul v. Kirkman, 27 Miss. 823, where it is stated: 'The rule upon this point is well settled to be that the memorandum, in order to satisfy the statute, must contain the substantial terms of the contract, expressed with such certainty that they may be understood from the contract itself, or some other writing to which it refers, without resorting to parol evidence. * * * And when reference is made in the memorandum to another writing, it must be so clear as to prevent the possibility of one paper being substituted for another.' "

Professor Williston asserts (1 Williston on Contracts, § 578, p. 1110) that "the American courts have required greater particularity in descriptions of real estate than in descriptions of goods," under the necessary memorandum clauses of the statute of frauds.

The English cases appear to exact less certainty in the description of real estate in the written note of the contract provided for by the statute mentioned. In Plant v. Bourne, 2 L. R. Ch. Div. (1897) 281, where it appeared that A agreed to sell and B to buy "24 acres of land, freehold, and all appurtenances thereto, at Totomslow, in the Parish of Draycott, in

the County of Stafford," it was held, reversing the trial judge, that parol evidence was admissible to show what was the subject of the contract. The cases of Ogilvie v. Foljambe, 3 Meriv. 53, and Shardlow v. Cottrell, 20 Ch. D. 90 were relied on as supporting the conclusion reached. There may be some doubt whether the first of these decisions really does so.

The courts of Massachusetts seem inclined to favor the liberal English view, in allowing the introduction of parol evidence to clear up an uncertainty in the description of land sale contracts, as against the mandate of the statute of frauds, and in Hurley v. Brown, 98 Mass. 545, 96 Am. Dec. 671, it was held that a memorandum for the sale of "a house and lot of land situated on Amity Street, Lynn, Mass." described the property with sufficient certainty to satisfy the statute aforesaid and to enable the contract to be specifically performed. Parol evidence was deemed admissible to apply this description to a house and lot on said street, owned by the vendor at the time the memorandum was signed, the court, in the course of its opinion, remarking:

"If the party who enters into the agreement in fact owns a parcel answering to the description, and only one such, that must be regarded as the one to which the description refers. With the aid of this presumption, the words 'a house and lot' on a street where the party who uses the language owns only one estate are as definite and precise as the words 'my house and lot' would be,—a description the sufficiency of which has been placed beyond all doubt by very numerous authorities."

This decision is very much relied on by plaintiff and appellant here. It appears to have been followed in subsequent decisions in that jurisdiction, in several of the other New England states, Maine, Rhode Isl-

and, and New Hampshire, and in one or two other states of the Union. The attention of this court has already been directed to it by counsel in the Burley-Winter Pottery Co. case, supra.

Other courts in this country, however, take a different view of the law when applied to facts either very similar, or substantially so. Their attitude would seem more in harmony with the position this court has heretofore assumed in its decisions hereinabove cited.

In Murdock et al. v. Anderson, 57 N. C. (4 Jones' Eq.) 77, the description of the real estate in the memorandum of sale was "one house and lot, in the town of Hillsborough." This was held insufficient, under the statute, to permit specific performance to be decreed, and the court said:

"We think the evidence is insufficient, because the receipt contains no description of the house and lot, by which it can be identified.

"This conclusion is fully supported by the authorities, *Mallory* v. *Mallory,* Busb. Eq. (45 N. C.) 80; *Plummer* v. *Owens,* ib. (45 N. C.) 254; *Allen* v. *Chambers,* 4 Ire. Eq. (39 N. C.) 125.

"The distinction is this: where a sufficient description is given, parol evidence must be resorted to, in order to fit the description to the thing; but where an insufficient description is given, or where there is no description, (as in our case) such evidence is inadmissible."

A vendor signed a memorandum reading:

"Received from Messrs. Hammer & Dauler, $20, on account of property sold to them, the houses on Smithfield street; the price to be $7800."

It was pleaded, in a bill for specific performance of the alleged contract, that the property where two

houses were located, on Smithfield street, which was accurately described in the pleading, was the only property owned by the vendor on the named street. Holding the description insufficient under the statute, and denying the relief sought, in Hammer et al v. McEldowney, 46 Pa. St. 334, the court said:

"This is a bill in equity praying for the specific execution of an alleged contract for 'the sale of the houses on Smithfield street,' without any designation of the houses where situate on the street mentioned, of what size, dimensions, or material, or the area of ground to be embraced, and without in fact disclosing to whom they belonged at the date of the alleged contract, excepting as it might be inferred by the receipt of the respondent for $20, in part payment of the purchase-money.

"It is a settled rule in equity, that the specific performance of a contract will not be decreed unless its terms are clear and capable of ascertainment from the instrument itself: Story's Eq. Juris. § 767. So courts of equity will not ordinarily entertain bills for the specific execution of contracts with variations or additions, or new terms to be made and introduced into them by parol: Id. 770. It requires no argument or illustration to bring this imperfect or indefinite contract within these rules. It is open and apparent upon its face that it requires much aid from parol evidence to perfect it."

So in the later case, arising in the jurisdiction last mentioned, of O'Connell v. Cease, et al., 267 Pa. St. 288, 110 A. 266, 267, the same principle was followed, it being held, that a contract giving an option to purchase a lot by simply referring to it as located on Main Street in a certain borough, the number, block, depth and width being left blank, although it additionally recited, "and improved silk mill and all silk machinery, tools and equipment, formerly Dutton Silk Co. Mill," failed to identify the land with suffi-

cient definiteness to warrant a decree of specific performance.

The following extract from the opinion in the case of Nippolt v. Kammon, 39 Minn. 372, 40 N. W. 266, sufficiently shows the facts and the view taken by the court, as they are pertinent here:

"This is an action to enforce specific performance of an agreement to convey real estate. The defendant had judgment below. The sufficiency of the description is the only matter involved. The description is: 'The following described real estate, situated in Dakota County and state of Minnesota, to-wit: Five acres, lot 3, sec. 23, town 28, range 23.' No means are given by which to determine what five acres in lot 3 is intended. When such an agreement contains sufficient elements of description, of course parol evidence may, and indeed must, be resorted to, to apply the description to the specific piece of land supposed to be intended; in other words, to show that a specific piece answers to the description in the writing. But the writing must be a guide to find the land,—must contain sufficient particulars' to point out and distinguish the piece from any other—so that when the description in the writing is laid beside the description of a particular piece, it may be seen with certainty that the latter was intended by the former."

In Miller v. Campbell, 52 Ind. 125, it was held that a written contract for the payment of a fixed sum as purchase price for "the one hundred and twenty acres of land in Shannon County, Missouri," could not be enforced in the face of the provisions of the statute of frauds.

Where the contract of sale sought to be enforced, in its clause purporting to furnish a description of the land involved, read, "The following described property, situate and lying in Rockingham County, State of Virginia, consisting of 13,650 acres, more or less, of timber land," the Court of Appeals of

Maryland, in Gorter v. Gale, 86 Md. 687, 39 A. 527, said:

"It is apparent that the terms of this contract in regard to the subject-matter—the land in Virginia— are so vague and uncertain that, according to well and long settled principles, no court of equity will enforce it. The land in Virginia, as described in the contract, may be in any part of the county named. It is impossible to locate or designate it."

And in Schroeder v. Taaffe, 11 Mo. App. 267, a memorandum which described the land sold as a "lot on 18th St., 50 ft. x 180, about 300 ft. S. of Hebert St." was held insufficient to satisfy the requirements of the statute of frauds. The court, among other defects in the writing, pointed out that "it does not even state on which side of Eighteenth Street it is situated."

In Nelson v. Davis, 102 Wash. 313, 172 P. 1178, 1179, there was a written offer to exchange property, duly accepted in writing, whose terms, as they furnished a description of the properties, read, "One lot and store building in Wendell, Idaho, in the County of Gooding, State of Idaho, for the property of Mr. L. V. Maxum, described as follows: ¾ of an acre on Bridge Street in Clarkston, in the County of Asotin, State of Washington." Declining to enforce the contract, and affirming a judgment for the defendant, the court remarked:

"Looking to the agreement of June 9, 1915, as evidenced by the writing above quoted, it seems plainly to fall far short of satisfying our statute of frauds as a contract to convey real property, in that no sufficient description of any real property appears therein."

In Logan v. Waddle, 315 Mo. 980, 287 S. W. 624,

625, where it was ultimately held that other writings cleared up the matter, the court, nevertheless, said:

"In invoking the statute of frauds, in this case, appellant relies principally upon the insufficiency of the description of the land in question. The language, 'a house and two lots located in the town of Ozark,' standing alone, will not suffice. The note or memorandum required by the statute need not be contained in a single document, but may be contained in separate writings when the separate writings, taken together, meet the requirements of the statute."

An apparently elaborate description of property, in a printed offer of sale and a written acceptance thereof, was:

"382 acres in village of Woodville, Greene county, Ga., 35 miles south of Athens, 100 miles east of Atlanta, on Georgia Railroad; high school and church, two-story residence, good water, 7 tenant houses, fruits, nuts, oak, pine, hickory, poplar and other wood; Bermuda grass pasture, soil varied with clay subsoil, and adapted to general farming, stock raising, dairying, fruit and nut culture; good crops of cotton (no boll weevil), corn, peas, peanuts, cane, hay, etc., this year. 5 or 6 horses cleared."

Yet, this description, in Durham v. Davison, 156 Ga. 49, 118 S. E. 736, 738, was held insufficient, under the statute of frauds, to allow a decree for specific performance to go, the court saying in part:

"But a description of land sold or contracted to be sold may apparently be very elaborate, and yet not sufficient. Much that appears in this advertisement because it serves to attract attention and give a general idea of the location of the land, affords no aid whatever when it comes to fixing the boundaries of the land actually sold. * * * .
The description thus set forth was, no doubt, very appropriate to an advertisement to attract the at-

tention of a purchaser; but the words, '382 acres in Greene county, in the village of Woodville, a two-story house, 7 tenant houses,' serve more for identification than the larger portion of the advertisement; but they did not fix the boundaries nor afford a key by which they could be fixed. All of those things—the two-story house, the tenant houses, Bermuda pasture, and other pasture fields—might very well have been located upon a tract of 100 acres of land, or even a small tract of land, and in no way indicated the outer boundaries of the entire tract."

See, also, the recent case of Molton v. Woodruff, 175 Ga. 168, 165 S. E. 59.

In Starkey, et al. v. Texas Farm Mortgage Co., 45 S. W. (2d) 999, 1000, a case decided in 1932 by the Court of Civil Appeals of Texas, a contract describing land to be sold, as 60 acres out of a certain survey in a named county, was held insufficient to meet the requirements of the statute of frauds, the court saying:

"The only language in the contract descriptive of the land to be sold is, '60 acres of land out of the Cyrus Sullivant Survey in Hill County, Texas.' The contract does not purport to cover all of the land in the survey in question, but only 60 acres out of said survey. It is apparent that the contract neither describes the particular 60 acres out of said survey that is being sold, nor furnishes any means by which it can be identified. The appellants in their petition described the 60 acres which they claimed was intended to be covered by the contract, and alleged that this was the only land owned by the vendor in the survey in question. They here contend that the presumption is that a vendor will not contract to sell any other land than that owned by him, and since the vendor owned no other land in the survey in question, parol evidence was admissible for the purpose of identifying the land intended to be sold. It is not a necessary inference, however, that the appellee was the owner, simply because it contracted to sell the land."

To the same effect is the earlier case decided by the same court, Harbers v. Brune, 245 S. W. 746.

Hogen v. Orr, 341 Ill. 58, 173 N. E. 162, 163, dealt with an instrument relied on as a contract for the sale of realty which was sought to be specifically enforced by cross bill in a suit to remove cloud from title and the writing gave the description of the land as "ground about 5 acres Cor Bronse & Eliz Peoria Ill." Denying the relief sought, it was held that this was an insufficient description. The court, assuming that the language meant "corner Bronze and Elizabeth Streets," said that these words implied an intersection of those streets, resulting in at least two, and possibly four, corners, and no clue was furnished as to which corner was meant, the area was not definitely stated, and there was no reference at all to ownership, occupation, or any other fact which would make the description apparently definite and by which it could be applied to a specific piece of property.

Again, in Heroux v. Romanowski, 336 Ill. 297, 168 N. E. 305, a decree was sought for the specific performance of a contract for the exchange of "the following described real estate, situated in the county of Cook and State of Illinois, to-wit: Six three-room flats and two (2) four-room flats at the northwest corner of Beldon avenue and Lamon avenue, commonly known as 2302-2310 North Lamon avenue, and lot, section ........, township ........ north, range ........ east of the third P. M.," for "the following described real estate, situated in the county of Cook and State of Illinois, to-wit: One five-room flat and two six-room flats at 3517 Palmer street, and the lot, section ........, township ........ north, range ........, east of the third P. M." Affirming a decree dismissing plaintiff's bill, the Supreme Court of Illinois said:

"To entitle a party to a specific performance of a contract, the terms of the contract must be clear, certain, unambiguous, and free from doubt. Olson v. Forsberg, 332 Ill. 266, 163 N. E. 697. A contract for the sale of land must definitely point out the land to be conveyed or furnish the means of identifying the land with certainty. If the contract fails in either of these respects, a court of equity will not decree its specific performance. Kopprasch v. Satter, 331 Ill. 126, 162 N. E. 141. In the case last mentioned the contract was for sale of 'property at 1332 Melrose street.' This court takes judicial knowledge of the fact that in the county of Cook there are many cities and vilages, in any one of which, for aught that appears in the amended bill of complaint, there might be a Beldon avenue, Lamon avenue, or Palmer street. The descriptions of the properties in the contract in question are so uncertain as to require parol evidence to locate the properties, and as these ambiguities appear on the face of the writing itself, the uncertainty in the descriptions cannot be cured by extrinsic evidence. Doyle v. Teas, 4 Scam, 202; Kohlbrecher v. Guettermann, 329 Ill. 246, 160 N. E. 142. The contract is so uncertain and ambiguous that a court of equity will not decree its specific performance."

Holding that a signed receipt for "$100, as part payment on a piece of property on the corner of Main and Pearl streets, city of Natchez, county of Adam, state of Mississippi," was defective as a contract, under the statute of frauds, on account of its uncertainty, and, in consequence, incapable of specific enforcement, in Holmes v. Evans, et al., 48 Miss. 247, 12 Am. Rep. 372, the court used the following language:

"Nothing is more common, in preparing executory contracts for the sale of land, than to designate the premises by referring to them as the same described in some specified deed of conveyance, or as

being the same of which some person named died seized, or by some other reference, whereby they can be readily ascertained and determined. Extraneous evidence so referred to, and any other evidence in connection with it, which may serve to identify and fix the limits of the land intended, is admissible and proper. There would appear to be no limit in that direction, except what is to be found in the general reference of the contract. For example, if a contract purports to embrace all the land owned by the vendor in a certain county, it would be admissible to prove any and all the land owned by him in that county.

"In the case under consideration, the memorandum or receipt refers to no extrinsic fact by which it could be ascertained on which corner of Main and Pearl streets the land in controversy is situated. And to allow parol evidence to establish its locality, would be in violation of the statute, in allowing that to pass by parol which the statute says shall not so pass, and would open the door to all the mischiefs intended to be provided against by the statute."

Of similar purport is the case of Weisenberger v. Huebner, 264 Pa. 316, 107 A. 763, the description held defective being a signed receipt dated at "South Bethlehem, Pa." for "money on acct. of purchase price for property at 3 & Spruce," the court saying:

"The part of the paper above the date is Cyphers' ordinary printed letter head, and even if a court would be justified in assuming therefrom the property referred to was in South Bethlehem, and that '3 & Spruce' meant Third and Spruce streets in that city, the statute of frauds would still apply, for the receipt does not specify the size of the property, or whether it is at the corner of '3 & Spruce,' and, if it is, at which corner."

Passing to authorities dealing with descriptions rather more precisely resembling those presented in the writing under consideration in the case at bar, we find it stated in the note to section 90, page 221,

of Pomeroy's Specific Performance of Contracts, (3d Ed.) that "A mere statement that the land is a certain quantity lying on a certain road, or stream, etc., or at the intersection of certain roads, etc., is generally an insufficient description, since only one or two boundaries are thereby ascertained."

In McCulloch v. McCombs Producing & Refining Co., 191 Ky. 518, 230 S. W. 917, 918, the views as expressed by the Court of Appeals of Kentucky concerning the point up for decision in that case, are here pertinent, the following language sufficing to indicate them:

"The principal question for decision is whether the description of the land in the written offer is sufficient to take the case out of the statute of frauds. It is the rule that the contract or memorandum must itself furnish the means of identifying the land, and, unless it does, the contract is within the statute. Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084; Bates v. Harris, 144 Ky. 399, 138 S. W. 276, 36 L. R. A. (N. S.) 154; Price v. Hays, 144 Ky. 535, 139 S. W. 810. In the last-mentioned case the description was as follows:

" 'About 150 acres of land near Otter Creek station, one mile north of Rineyville, Hardin county, Kentucky, on I. C. R. R.'

"In holding the description insufficient the court said:

" 'In the case at bar, appellee does not refer to the land as his, or as his home place; he simply agrees to convey about 150 acres of land near Otter Creek station. No words are used in the writing to give a starting point, nor is the description sufficient to authorize parol proof to aid in identifying the land. It is true appellant stated in an amended petition that appellee owned only one tract of land near the place named, but this idea is not gotten from the writing; there was nothing therein to indicate this fact, or that he owned no other land in that vicinity.'

"Here, the description is, '427 acres more or less, Lineville, Ala. dist. on A. B. & R. R.' If anything this description is much more vague than the description involved in the case of Price v. Hays. It is indefinite, not only as to the number of acres, but as to the ownership and location of the land. Indeed there is no tract of land in the Alabama district and on the A. B. & R. R. to which it will not apply. We therefore conclude that the description is not sufficient to take the case out of the statute of frauds."

A written contract for the sale of minerals in a tract of land, in describing the property, employed this language:

"The following described tract or boundary of land containing 600 acres, more or less, situate in Crook district, Boone county, West Virginia, described as follows, to-wit: On the West Fork of Little Coal River, and James Creek of said West Fork."

The trial court entered a decree for specific performance of the contract. Reversing the decree and ordering a dismissal of the bill, in Crawford v. Workman, 64 W. Va. 10, 61 S. E. 319, the judge, speaking for the appellate court, stated its reasoning, in part, as follows:

"I assume that nobody will say that the contract above quoted, in and of itself, identifies the land. In what part of Crook District, which may be large in area, does this land lie? What particular land on the West Fork of Little Coal river and James Creek out of the thousands of acres there lying? What part is on the West Fork and what part on James creek? Does it lie at the mouths or at the heads of those streams? Is there any surveyor to be found who could go on those streams and pick out this land from the lantern of this contract? No corners, no lines, no indexes to specify or guide. It is true that, under circumstances, proper evidence outside the contract may be called for help. * * * You cannot make a contract by oral evidence. You cannot put into the con-

tract by oral evidence a most material element which the statute of frauds designs to be in writing. The trouble in this case is, that the contract itself neither specifies the particular land nor does it refer to any thing out side the contract by which to identify the land. It contains no such pointers. It does state the district and the streams, but where in that district or on these streams? It is lame because it contains nothing to point out that land, or point out something by which it may be made certain. * * * Our own cases would forbid specific execution of this contract, because of its uncertainty. See 12 Encyclopedic Digest 491 to 495. In *Ensminger v. Peterson,* 53 W. Va. 324, 44 S. E. 218, we held void a contract selling a tract of land * * * situate on the south side of the South Fork near Owen Talkington.' That is as good a description as this is. So in *Blankenship v. Spencer,* 31 W. Va. 510, 7 S. E. 433, and *Mathews v. Jarrett,* 20 Id. 514, 'ten acres of land on the West side of the Branch on the Kenny place, where Mathews now resides.' So in *Westfall v. Cottrills,* 24 W. Va. 763; 'Forty acres off the Spring Fork end of my tract of 147 acres on Beech Fork in Calhoun county.' In *Webb v. Ritter,* 60 W. Va. 197, 54 S. E. 484, we held a deed void for uncertainty in the following description: 'All that certain tract or parcel of land situate in McDowell county, West Virginia, on Ring's Branch, Peggy's Fork and Laurel Creek, all tributaries of the Dry Fork of Tug river, supposed by estimation to contain one hundred acres be the same more or less.' "

A similar conclusion was reached in the case of Guinn v. Warbutton, 64 W. Va. 76, 60 S. E. 1100.

In the light of the above cited interpretations given by the courts of our sister states, under the statute of frauds, to memoranda of sales contracts, where the descriptions of lands involved have been held to be so uncertain and indefinite as not to afford ground for the specific performance thereof, it is our conclusion that the agreement relied on at bar must also be regarded as subject to the same criticism. Neither of the properties referred to by proposed contract of ex-

change was designated therein so as to comply with the requirements of the statute invoked by respondent.

The description of what Miss Haywood was to deliver clear title to, viz., "280 acres of land on Clear Creek in township 54—range 79" in Sheridan County, does not at all indicate what 280 acres are intended. It does not say that this land is "her" land or "owned by her," index fingers which would clearly point, through explanatory evidence, to what property was meant. Does every acre of the mentioned total border on Clear Creek or, if not, what part of the acreage does? Is all of it on one side of the stream or on the other? Or is it true that part of the land is on one side and the remainder on the other? The memorandum before us does not tell nor does it contain within it a key to unlock further information. It is said that Miss Haywood was the owner of a tract of land in a specified township but the proof is, as a matter of fact, the acreage of the tract she held title to was less than 260. We are quite unable to perceive that "280 acres on Clear Creek" in a numbered township is identical in legal significance, with "260 acres on Clear Creek owned by Edna E. Haywood" in that county subdivision. Again, by the memorandum aforesaid, Mr. Noland agreed to deliver a clear title to "property located in Sheridan, Wyoming, at 9-N-Vale Ave., including all furniture." To what "property" did this description refer? Was real or personal property meant? Is all or part of the "property," located at the avenue number, intended? It is impossible to glean this vital data from the writing itself. See Kopprasch v. Satter, 331 Ill. 126, 162 N. E. 141, 162 N. E. 141. In other words, parol evidence must be resorted to, to supply omitted terms, to make definite and certain that which the writing of the parties left indefinite and uncertain, and to show

their intent, because it cannot be found in the language of their instrument. This may not be here done. 5 Pomeroy's Equitable Remedies (2d Ed.), § 2188. If omitted essential provisions in a writing can be supplied by the inference or the presumption of the courts, deduced from oral testimony, the statute of frauds may as well be expunged from our law. The judgment of the district court was correct and, consequently, is affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.