# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 39

OCTOBER TERM, A.D. 2019

March 20, 2020

JERRY K. DAVIS,

Appellant
(Defendant),

v.

S-19-0119

HARMONY DEVELOPMENT, LLC,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*
Weston W. Reeves and Anna Reeves Olson, Park Street Law Office, Casper, Wyoming. Argument by Ms. Olson.

*Representing Appellee:*
Billie LM Addleman and Kara L. Ellsbury, Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Mr. Addleman.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]    Harmony Development, LLC (Harmony), the seller, and Jerry K. Davis, the buyer, entered into a contract for the sale of a lot in the Harmony Hills subdivision, Casper, Wyoming.  Mr. Davis later decided he no longer wanted to purchase the lot.  Harmony sued him, asserting breach of contract, among other claims, and seeking specific performance.  After a bench trial, the district court found that Mr. Davis had breached the contract and ordered him to specifically perform.  Mr. Davis appeals.  We affirm.

## *ISSUES*

[¶2]    The issues are:

> 1.  Did the contract satisfy the statute of frauds and if not, does the doctrine of partial performance apply?
>
> 2.  Did the district court abuse its discretion when it awarded specific performance of the contract?

## *FACTS*

[¶3]    Harmony owned a large multi-lot subdivision in Casper, Wyoming, known as Harmony Hills Addition No. 2 (Harmony Addition).  Lisa Burridge, Harmony's manager and agent, approached Mr. Davis, a real estate developer and owner of a health and fitness club, about buying a lot and developing a new health and fitness club in the Harmony Addition.  Harmony and Mr. Davis negotiated terms from November 2014 through February 2015.  On February 9, 2015, they executed a contract for the purchase and sale of close to seven acres of land in Harmony Addition described as "Lots 1, Block 2, Harmony Hills Addition #2," for a price of $1,500,000.  Mr. Davis paid a $25,000 deposit.

[¶4]    The contract contained the following terms:

> X.    CONDITION OF PROPERTY.
>
> .    .    .
>
> B. Buyer acknowledges and agrees that, upon execution of this Contract:
>
> > 1.  Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to

1

any condition which Buyer deems to be material to Buyer's decision to purchase this property; . . .

.    .    .

XV.    DEFAULT, REMEDIES AND ATTORNEY'S FEES.

A.    TIME IS OF THE ESSENCE hereof, and any party who fails to tender any payment, or perform any other condition hereof as herein provided, shall be in default of this Contract.  **In the event of default, the non-defaulting party** may elect to treat this Contract as breached and recover such damages as may be proper, or **may treat this Contract as being in full force and effect and require specific performance of the terms hereof**.  In lieu of the remedy provided above to Seller if Buyer is the defaulting party, Seller may elect to terminate the Contract and recover such damages as may be proper, or Seller may elect to retain all payments made hereunder as liquidated damages, such amount, if elected by Seller, being agreed by the parties hereto to constitute compensation for the loss of opportunity suffered by Seller due to such breach.

B.    In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees, costs and other expenses which the non-breaching or non-defaulting party may incur in enforcing this Contract with or without formal proceedings.  **This provision shall not limit any other remedies to which the parties may otherwise be entitled.**

.    .    .

XVI.  ADDITIONAL PROVISIONS.

.    .    .

4. Sellers['] obligations hereunder and closing shall be subject to the Seller receiving all

2

necessary approvals from the City of Casper, utility companies, etc., in order to complete the infrastructure for the subject property. Closing shall occur within seven calendar days following Sellers' receipt of "substantial completion" as provided by City of Casper.

**Continued on attached addendum.**

(Emphasis added.) The attached addendum provided:

5. Seller intends to develop subject property such that Yesness Street is completed along the subject property on the South side and Tranquility Way is completed along the subject property on the East side of the subject property (see attached preliminary plat). Seller will provide [electric, gas, and internet service to the lot line and] will pay for the installation of City water and City sewer lines along Tranquility Way and Yesness Street.

.   .   .

8. **See preliminary plat of subject property attached.** Buyer is purchasing a lot that is approximately 6.76 acres in size.

9. Buyer understands that the proposed Cordial Drive may be constructed at a later date, or **may be eliminated from final plat**.

10. Seller will remove existing City water line that runs North to South on property and backfill and compact area where removed.

(Emphasis added.)

[¶5]   On March 23, 2015, the parties executed an addendum to the contract (March 2015 addendum). The March 2015 addendum amended the contract as follows:

1.  Lot size to be increased by 15,387 square feet

3

2. Price to be increased by $5.09 per square foot x 15,387 square feet = $78,319.83

3. New purchase price to be $1,578,319.83

4. Legal description of property shall be Lot 1, Block 1, Harmony Hills Addition No. 2, Phase 1.

Harmony recorded the final plat (which included the new legal description of Mr. Davis's lot) on July 22, 2015.

[¶6]   Approximately one year after signing the March 2015 addendum and seven months after the plat was recorded, Mr. Davis informed Harmony that he would not complete the purchase. In a March 11, 2016 e-mail to Ms. Burridge he explained:

> The vision of Harmony Hills that was represented to us in the beginning has changed over the last year . . . . The new projected projects do not fit in harmony with our planned facility. We understand that things change and you've done everything you can to continue your development through the sluggish economy. At this time we are not ready to purchase property and build our facility in Harmony Hills.

[¶7]   Harmony sued Mr. Davis, claiming breach of contract and breach of the covenant of good faith and fair dealing. Mr. Davis argued that the contract was unenforceable for failure to comply with the statute of frauds and asserted counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and negligent misrepresentation. The district court granted summary judgment to Harmony on Mr. Davis's claim of negligent misrepresentation. It held a bench trial on the remaining claims and defenses, and on January 3, 2019, entered judgment in favor of Harmony. The district court ordered Mr. Davis to specifically perform the contract, as amended. Mr. Davis appeals.

## DISCUSSION

[¶8]   Mr. Davis argues that the district court erred when it granted specific performance of the contract for several reasons, including that the contract violated the statute of frauds. We first address the question of whether the contract complies with the statute of frauds or whether it fits within an exception to the statute of frauds and then turn to the issue of whether the district court abused its discretion when it awarded specific performance.

4

***I.***  ***Did the contract satisfy the statute of frauds and if not, does the doctrine of partial performance apply?***

**A.**  **Standard of Review**

[¶9]  The determination of whether an agreement falls within the statute of frauds is a question of law which is reviewed de novo.  *In re Estate of Maycock*, 2001 WY 103, ¶ 12, 33 P.3d 1114, 1117 (Wyo. 2001).  "[A]pplication of the statute of frauds is not automatic."  *Parkhurst v. Boykin*, 2004 WY 90, ¶ 15, 94 P.3d 450, 457 (Wyo. 2004).

**B.**  **Analysis**

**1.  The Statute of Frauds**

[¶10]  Mr. Davis makes no allegation of fraud, deceit, or mistake as to the identity of the property conveyed nor does he contend that he did not understand which parcel of land was the subject of the contract.  Mr. Davis argues instead that the contract failed to sufficiently describe the property.  As a result, he asserts the statute of frauds renders the contract invalid.

[¶11]  Wyoming's statute of frauds provides that "[e]very agreement or contract for the sale of real estate" "shall be void unless" the "agreement, or some note or memorandum thereof" is "in writing, and subscribed by the party to be charged therewith."  Wyo. Stat. Ann. § 1-23-105(a)(v) (LexisNexis 2019); *see also Linton v. E.C. Cates Agency, Inc.*, 2005 WY 63, ¶ 26, 113 P.3d 26, 31–32 (Wyo. 2005).  Generally,

> a contract within the Statute of Frauds is enforceable if it is evidenced by any writing, signed by or on behalf of the party to be charged, which
>
> (a) reasonably identifies the subject matter of the contract,
> (b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and
> (c) states with reasonable certainty the essential terms of the unperformed promises in the contract.

Restatement (Second) of Contracts § 131 (Am. Law Inst. 1981); *see Richardson v. Schaub*, 796 P.2d 1304, 1310 (Wyo. 1990) (adopting the Restatement).

[¶12]  A contract for the sale of land "must indicate with reasonable certainty the nature of the transaction and must provide a basis for identifying the land . . . ."  Restatement (Second) of Contracts § 131 cmt. e.  In order to satisfy the statute of frauds, "[a] valid

5

contract to convey land must expressly contain a description of the land, certain in itself or capable of being rendered certain by reference to an extrinsic source which the writing itself designates." *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2010 WY 82, ¶ 29, 239 P.3d 382, 391 (Wyo. 2010) (quoting *Pullar v. Huelle*, 2003 WY 90, ¶ 10, 73 P.3d 1038, 1041 (Wyo. 2003)); *see also Matter of Estate of Jackson*, 892 P.2d 786, 789 (Wyo. 1995). "The relationship and connection between separate writings must appear on their face . . . ." *Bereman v. Bereman*, 645 P.2d 1155, 1159 (Wyo. 1982).

[¶13]  Mr. Davis first argues that because the contract described the property to be sold as "Lots 1, Block 2, Harmony Hills Addition #2" and the plat that was ultimately filed with the City of Casper described the lot as "Lot 1, Block 1 . . . ," the contract did not sufficiently describe the property.  This argument ignores the March 2015 addendum, which changed the legal description of the property to "Lot 1, Block 1, Harmony Hills Addition No. 2, Phase 1."

[¶14]  Both the contract and its amendments must be read together to determine whether the contract satisfies the statute of frauds.  *See Wells Fargo Bank Wyoming, N.A. v. Hodder*, 2006 WY 128, ¶ 23, 144 P.3d 401, 409 (Wyo. 2006).  Accordingly, the question that must be addressed is whether the contract, together with the March 2015 addendum describing real property as "Lot 1, Block 1, Harmony Hills Addition No. 2, Phase 1," satisfies the statute of frauds.  "[A] valid contract to convey land must expressly contain a description of the land, certain in itself or capable of being rendered certain by reference to an extrinsic source which the writing itself designates."  *Jackson*, 892 P.2d at 789 (citing *Noland v. Haywood*, 46 Wyo. 101, 120–21, 23 P.2d 845, 850–51 (1933)).[1]

---

[1] This Court has addressed the question of the sufficiency of a property description to meet the statute of frauds on numerous occasions.  In *Pullar v. Huelle*, a contract to buy and sell real estate which described the property to be sold as a "parcel of land in the NW1/4SW1/4, Sec. 16" did not sufficiently describe the portion of land to be sold, and thus, failed to satisfy the statute of frauds.  *Pullar*, ¶ 12, 73 P.3d at 1041. The *Pullar* Court explained that there was "nothing within the contract that guides us to specific extrinsic evidence of [the size and specific location of the land]."  *Id.*  In *Noland v. Haywood*, an action for specific performance of a real estate sales contract, the land was described as "280 acres of Land on Clear Creek in Township 54—Range 79 . . . in Sheridan Co. . . ." but did not specify what 280 acres were intended. *Noland*, 46 Wyo. at 104, 120, 23 P.2d at 845, 850.  The *Noland* Court concluded that this description was insufficient because it did not contain an adequate description or furnish the means by which the land could be identified.  *Id.* at 114–20, 23 P.2d at 848–50.  Similarly, in *Matter of Estate of Jackson*, an agreement providing the total acreage without any description or location of land involved did not satisfy the statute of frauds.  *Jackson*, 892 P.2d at 789–90; *see also Platte Valley Wyo-Braska Beet Growers Assn. v. Imperial Sugar Co.*, 100 F. App'x 717, 721, 2004 WL 1229575, at *3 (10th Cir. June 3, 2004) (concluding that contract failed to satisfy statute of frauds when it did not provide a legal description of the property to be conveyed and the only description of the property in the term sheet was the title of that document, which read "Torrington, Wyoming Holly Beet Processing Plant").

By contrast, in *Flygare v. Brundage*, the description of property as "[a]ll that part of the Northeast Quarter of the Northwest Quarter of Section 22, Township 41 North, Range 116 West, 6th P.M., lying west of U. S. Highway 89 and 187," was not too vague to comply with statute of frauds even though the

[¶15] Here, the contract and the addendum did not indicate "with reasonable certainty" the "basis for identifying the land." *See Comet Energy*, ¶ 29, 239 P.3d at 391; *Pullar*, ¶ 10, 73 P.3d at 1041. The March 2015 addendum was signed by both parties and identified the property's location as "Lot 1, Block 1, Harmony Hills Addition No. 2, Phase 1." The addendum failed to incorporate or attach the plat depicting the land identified as "Lot 1, Block 1." While both the original contract and the addendum referenced the plat, at the time the addendum was executed the plat had not been filed. The record is devoid of any memorandum, subscribed by Mr. Davis, that identifies the property with certainty. *See* Wyo. Stat. Ann. § 1-23-105(a)(v). Accordingly, the contract violates the statute of frauds. Our inquiry, however, does not end here.[2]

## 2. The Doctrine of Partial Performance

[¶16] As both parties recognized, there are equitable exceptions to the statute of frauds, "including the doctrines of full or partial performance and promissory estoppel." *Redland v. Redland*, 2012 WY 148, ¶ 89, 288 P.3d 1173, 1193 (Wyo. 2012). The "legislative policy encompassed in the statute of frauds should be departed from only when such action is necessary to avoid the fraud, and accomplish what justice and good conscience demand. To accomplish the purposes of the statute of frauds, it may be necessary for a court to uphold oral agreements." *Remilong v. Crolla*, 576 P.2d 461, 465 (Wyo. 1978) (internal citations and quotation marks omitted); *see also Maycock*, ¶ 19, 33 P.3d at 1119 (the "statute of frauds was enacted to prevent fraud, not to aid it").

[¶17] Under the doctrines of full or part performance, "[w]hen one side of an oral agreement has been fully or substantially performed, the agreement is removed from the statute of frauds." *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo. 1997); *see also* Restatement (Second) of Contracts § 139. A contract violating the statute of frauds "that has been partially or wholly performed by one party, to its detriment, may be enforced by that party." *Simek v. Tate*, 2010 WY 65, ¶ 21, 231 P.3d 891, 899 (Wyo. 2010). The "doctrine of partial performance . . . is an equitable theory based upon estoppel." *Id.* ¶ 22, 231 P.3d at 900.

---

agreement described the property as being 13 acres and the seller later claimed the property was 7.93 acres. *Flygare v. Brundage*, 76 Wyo. 350, 358, 362, 302 P.2d 759, 761, 763 (1956); *see also Holland v. Windsor*, 461 P.2d 47, 52 (Wyo. 1969) (deed of ranchland reserving to grantor 80 acres and providing that in selecting the reserved portions grantor would minimize amount of hay or meadowland to be included was not so ambiguous and uncertain as to render reservation of right to select 80 acres invalid because of statute of frauds).

[2] The district court erroneously concluded that the contract complied with the statute of frauds. *See supra* ¶¶ 8–15. "[W]e may affirm a district court's decision on any proper legal grounds supported by the record." *Barela v. State*, 2017 WY 66, ¶ 4, 395 P.3d 665, 668 (Wyo. 2017) (internal citation and quotation marks omitted); *Rogers v. Wright*, 2016 WY 10, ¶ 15, 366 P.3d 1264, 1271 (Wyo. 2016).

[It] operates not upon the theory that the part performance is a substitute for the written evidence required by the statute of frauds, but rather on the theory that the defendant may be estopped in view of the part performance to assert the statute as a defense.

*Id.* (quoting 73 Am. Jur. 2d *Statute of Frauds* § 314 (2001)).

[¶18]   The sufficiency of acts necessary to establish partial performance is a question of law.  *Simek*, ¶ 23, 231 P.3d at 900–01 (citing 73 Am. Jur. 2d *Statute of Frauds* § 319); *Maycock*, ¶ 12, 33 P.3d at 1117; *Jackson*, 892 P.2d at 788; *see also* R. T. Kimbrough, Annotation, *Doctrine of Part Performance in Suits for Specific Performance of Parol Contract to Convey Real Property*, 101 A.L.R. 923, § VI(a) (1936) ("Whether the evidence is sufficient to take such a contract out of the operation of the statute is a question of law for the court.").  We review the district court's factual findings for clear error.  *Sharpe v. Timchula*, 2019 WY 121, ¶ 19, 453 P.3d 761, 766 (Wyo. 2019); *Moore v. Wolititch*, 2015 WY 11, ¶ 9, 341 P.3d 421, 423 (Wyo. 2015).

[¶19]   The doctrine "will not be applied to avoid the statute of frauds unless the oral agreement sought to be enforced is just and certain . . . ."  *Redland*, ¶ 90, 288 P.3d at 1193 (quoting *Parkhurst*, ¶ 15, 94 P.3d at 458 (quoting *Hovendick v. Ruby*, 10 P.3d 1119, 1124 (Wyo. 2000))).  Where the performance alleged is part performance, that part performance must be substantial.  *Davis v. Davis*, 855 P.2d 342, 346 (Wyo. 1993).

[¶20]   Substantial performance requires that

> [the] acts and conduct of the defendant . . . amount to a representation that the defendant proposed to stand by the agreement and not use the statute to escape its performance and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of the contract, to so far alter his or her position as to incur an unjust injury and loss in case that the defendant is permitted to rely upon the statutory defense.

73 Am. Jur. 2d *Statute of Frauds* § 297 (2012).

[¶21]   Here, there is no dispute as to the terms of the agreement.  The contract required Harmony to:

- Furnish a title commitment;

8

- Receive "necessary approvals from the City of Casper, utility companies, etc[.,] in order to complete the infrastructure for the subject property";
- "[D]evelop subject property such that Yesness Street is completed along the subject property on the South side and Tranquility Way is completed along the subject property on the East side of the subject property";
- "[P]rovide to the lot line electric service, gas service, Bresnan service and Century Link service";
- Pay "for the installation of City water and City sewer lines along Tranquility Way and Yesness Street"; and
- "[R]emove existing City water line . . . and backfill and compact area where removed."

[¶22] The district court's findings of facts detail Harmony's partial performance of the contract and that the performance was substantial. The district court found that Harmony provided a title commitment; received approvals from the City of Casper; and invested in "water, sanitary, storm sewer, gas lines, electrical installation, dirt movement and grading, along with curb, gutter and sidewalks . . . ."[3] These findings are supported by the record. For example, Ms. Burridge testified that Harmony obtained the necessary approvals from the City; completed Yesness Street and Tranquility Way; provided electric, gas, Bresnan, and Century Link services to Mr. Davis's lot line; and paid for the installation of city water and sewer lines along Tranquility Way and Yesness Street.

[¶23] Mr. Davis argues that the infrastructure expenditures were not incurred as a result of his contract with Harmony but were incurred instead for the benefit of a strip mall[4] and other lots. It may be that some of Harmony's performance of the contract requirements was tied to the subdivision as a whole; however, much of its performance was exclusively tied to the contract. For example, bringing the utilities to the lot line, providing the title commitment, and constructing infrastructure on Mr. Davis's lot were all performed exclusively to comply with Harmony's duties to Mr. Davis. Harmony's performance of the contract terms cannot be disregarded, even if that performance provided some benefits to the subdivision as a whole, where its performance would not have been accomplished but for the contract.

[¶24] In *Simek*, we listed factors relevant to determining whether a contract (that does not comply with the statute of frauds) has been substantially performed: "(1) the relations of the parties; (2) the nature of the parol agreement; and (3) the relative benefit and detriment derived by the parties." *Simek*, ¶ 23, 231 P.3d at 900. The first factor is the relations of the parties. Both parties are sophisticated and experienced in real estate

---

[3] During negotiations of the terms of the contract, Mr. Davis had requested provisions requiring Harmony to install curbs, among other things.

[4] Ms. Burridge testified that the infrastructure was not necessary for the strip mall.

development and construction which weighs in favor of enforcement. The district court found that "Mr. Davis had significant experience in real estate development and construction, including experience with the development and construction of a health and fitness club in east Casper." Ms. Burridge was Harmony's manager and agent. Mr. Davis and Ms. Burridge engaged in negotiations regarding Mr. Davis's purchase of the lot from November 2014 through February 2015, when the contract was executed.

[¶25] The second factor, "the nature of the parol agreement," also favors enforcement. While the contract, as amended, failed to describe the property sufficiently to comply with the statute of frauds, other terms and conditions were clearly set forth. Additionally, Mr. Davis received a copy of the preliminary plat at the time he signed the contract; later, he was provided a copy of the revised plat reflecting the changed square footage and legal description contained in the March 23, 2015 addendum; finally, he was provided a copy of the recorded plat. The legal description of the property contained in the March 2015 addendum, and reflected in the recorded plat, did not change between the time the addendum was executed and the time the plat was recorded on July 22, 2015. Mr. Davis testified that he knew which lot he was purchasing. The terms of the parol agreement aligned with the written agreement. The district court found that "Mr. Davis acknowledged that as of March 11, 2016, when he decided to walk away from [purchasing the lot], he knew that he had a contract to purchase from Harmony [Hills] and knew which lot he was purchasing pursuant to that contract."

[¶26] The final factor balances the relative benefit and detriment derived by the parties. Here, Harmony suffered a substantial detriment when Mr. Davis refused to purchase the lot in Harmony Hills. Ms. Burridge testified that Mr. Davis's fitness center was an anchor tenant and "would have been the catalyst for a lot of different things happening there." When Mr. Davis withdrew, other purchasers and tenants walked away. Harmony incurred substantial costs in performing its obligations under the agreement. After Mr. Davis withdrew, Harmony marketed his property, along with the rest of the parcels, and no offers have been received on "any of [their] parcels." At the same time, Mr. Davis's lot benefitted from Harmony's partial performance of the contract terms. *See supra* ¶¶ 21–22. The district court determined that Harmony invested a significant amount "on infrastructure and [incurred other expenses] in connection with its performance under the Contract to Buy and Sell Real Estate, as amended, which expenses would not have been incurred if Mr. Davis had not contracted to purchase the subject lot."

[¶27] Mr. Davis's conduct, until the time he announced he would not go through with the purchase, amounted to a representation that he intended to purchase the lot as required by the agreement. He never questioned the description of the property or raised the statute of frauds. He never complained about the plats. Harmony, in reliance on Mr. Davis's conduct and the contract, proceeded to perform its obligations under the contract and altered its position to its detriment. We conclude that the district court's findings are

not clearly erroneous and that the equities require enforcement of the contract under the doctrine of partial performance.

## II. Did the district court abuse its discretion when it awarded specific performance of the contract?

[¶28]   After a bench trial, the district court issued Findings of Fact, Conclusions of Law and Judgment.   It concluded that Mr. Davis had breached the contract and made the following findings regarding specific performance:

> 49.     With respect to the claims for breach of contract and specific performance . . . the elements required to be proven are: (a) there was a binding contract with [Mr. Davis], (b) the terms of the contract, (c) [Mr. Davis] breached one or more of the terms of the contract, and (d) specific performance is a proper remedy for the breach of contract.
>
> .     .     .
>
> 53.     . . . [T]he remedy of specific performance is available to compel the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances.
>
> 54.     . . . [I]t has been recognized that where land, or any estate or interest in land, is the subject matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend on the inadequacy of the legal remedy in the particular case; and further that the remedy is as equally available when the party seeking specific performance is the seller as when the party is the buyer.
>
> 55.     Competent and persuasive evidence was presented at trial to establish by a preponderance of the evidence that the parties' contract expressly provided for the remedy of specific performance in the event of default, that Harmony Development spent significant sums of money to complete the infrastructure for the real property and to perform its obligations under the contract, and that the equitable considerations strongly support an equitable remedy in lieu of money damages because a monetary award would be inadequate or impractical.

11

The court entered judgment awarding specific performance.

[¶29] Mr. Davis makes numerous arguments as to why the district court erred when it granted specific performance. In addition to his statute of frauds argument, *see supra* ¶¶ 8–10, he contends specific performance was not a proper remedy because Harmony did not establish that money damages were inadequate or impractical; the parties contemplated future negotiations regarding a material term; and the contract was unenforceable because it violated Casper's municipal code.

## A.     Standard of Review

[¶30] We review an award of specific performance for abuse of discretion.

> Specific performance is an equitable remedy subject to the court's sound discretion. *Rainbow Oil Company* [*v. Christmann*,] 656 P.2d [538,] 545 [(Wyo. 1982)]. We clarified the definition of an abuse of discretion when we stated the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). In *Vaughn*, we confirmed that judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.*

*Dewey v. Wentland*, 2002 WY 2, ¶ 42, 38 P.3d 402, 417 (Wyo. 2002).

[¶31] Our standard of review of findings from a bench trial is well established:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law de novo on appeal.

*Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250, 1253 (Wyo. 2003) (citations omitted); *see also Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890–91 (Wyo. 2005). "Findings may not be set aside because we would have reached a different result." *Piroschak*, ¶ 7, 106 P.3d at 890 (citations omitted).

## B.    Analysis

[¶32]  Specific performance is an equitable remedy granted under limited circumstances:

> Specific performance is not granted as a matter of absolute right even though there is a valid contract.  The remedy will be utilized only in the discretion of the court, depending on the facts of the case and the special equities of the situation. *Otis Oil & Gas Corporation v. Maier*, 1955, 74 Wyo. 137, 146–147, 284 P.2d 653, 656; *Merrill v. Rocky Mountain Cattle Co.*, 1918, 26 Wyo. 219, 181 P. 964; *Keller v. California Liquid Gas Corporation*, D.C.Wyo. 1973, 363 F.Supp. 123, 128.
>
> Section 367, Restatement of the Law of Contracts, p. 665, declares that specific enforcement of a contract may be refused if its enforcement would cause unreasonable or disproportionate hardship to third persons.

*Reed v. Wadsworth*, 553 P.2d 1024, 1037 (Wyo. 1976).

[¶33]  In its discretion, a court may grant specific performance "only where there is a valid, binding contract and the facts and special equities of the situation demand such relief." *Dewey*, ¶ 35, 38 P.3d at 416 (citing *Rainbow Oil*, 656 P.2d at 545). "[T]he contract terms must be so certain that the court can require the specific thing agreed upon to be done." *Dewey*, ¶ 35, 38 P.3d at 416 (citing *Williams v. Dietz*, 999 P.2d 642, 644–45 (Wyo. 2000)); *see also Fowler*, 933 P.2d at 504–05.  In addition, the "party requesting specific performance must be able to establish that damages for breach are an inadequate and impractical remedy under the circumstances of the case." *Rainbow Oil*, 656 P.2d at 545.

### 1.  Inadequacy and Impracticality of Legal Damages

[¶34]  Mr. Davis's first argument is that Harmony did not establish money damages were inadequate.  He asserts the district court did not explain what equitable considerations applied, but he presumes it was merely because Harmony did not receive any offers when it listed the property after Davis's breach.  According to Mr. Davis, this is insufficient for

13

the district court to order specific performance. He also proffers that, because the listing price after breach was $1,860,000 (a $360,000 increase over the contract price), the inflated listing negates a claim that remedies at law are inadequate. Mr. Davis does not cite any cases or legal authority for this proposition.

> Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances. It is a means of compelling a contracting party to do precisely what he should have done without being coerced by a court.

*Davidson Land Co., LLC v. Davidson*, 2011 WY 29, ¶ 33, 247 P.3d 67, 76 (Wyo. 2011) (citing 81 C.J.S. *Specific Performance* § 2, at 701; 71 Am. Jur. 2d 10, *Specific Performance* § 1; Restatement of Contracts § 358 cmt. a, § 359(2), § 360(b), § 362(c) (Am. Law Inst. 1932, update 2019)); *see also Ekberg*, ¶ 22, 76 P.3d at 1257 (quoting *Williams v. Collins Commc'ns, Inc.*, 720 P.2d 880, 892 (Wyo. 1986)).

[¶35] "Specific performance is not granted as a matter of absolute right even though there is a valid contract. The remedy will be utilized only in the discretion of the court, depending on the facts of the case and the special equities of the situation." *Reed*, 553 P.2d at 1037 (citations omitted).

[¶36] Here, the district court concluded that "where land, or any estate or interest in land, is the subject matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend on the inadequacy of the legal remedy in the particular case." The court found specific performance "is as equally available when the party seeking specific performance is the seller as when the party is the buyer." Mr. Davis maintains that the district court erred because Harmony was required to, and did not, establish that monetary damages were inadequate and impractical and, as a result, specific performance was not available. Mr. Davis argues that *Dewey*, ¶ 35, 38 P.3d at 416, controls. Harmony cites *Keystone Sheep Co. v. Grear*, 72 Wyo. 189, 201, 263 P.2d 138, 142 (1953) and the Restatement of Contracts and contends that the district court was correct when it presumed monetary damages were inadequate and impractical in this case.

[¶37] In *Keystone Sheep*, this Court recognized that "[a]s a general rule" courts presume that a "remedy at law is inadequate in [the] case of contracts to convey land, and no further allegation of inadequacy of legal remedy is necessary beyond that which is implied from the statement of the nature of the contract." *Keystone Sheep*, 72 Wyo. at 201, 263 P.2d at 142. The purchaser in *Keystone Sheep* contracted to purchase real property from her sister-in-law, the seller. The purchaser paid the full purchase price and before the deed was executed, the seller married Mr. Grear. *Id.* at 195, 263 P.2d at 139–

40. The seller died shortly thereafter in an automobile accident and Mr. Grear inherited the property. *Id.* The purchaser sued Mr. Grear and was awarded specific performance compelling Mr. Grear to convey the property to her, despite a lack of proof that a legal remedy was inadequate. *Id.* at 202–03, 263 P.2d at 143. On appeal, this Court affirmed. *Id.* at 209, 263 P.2d at 146.

[¶38] In *Dewey*, the parties entered into a lease purchase agreement regarding the Wentland ranch. A dispute arose, the buyers sued, and the sellers counterclaimed seeking specific performance of the agreement. *Dewey*, ¶¶ 1, 5, 38 P.3d at 407–08. The trial court denied the sellers' request for specific performance and the sellers appealed. *Id.* ¶ 36, 38 P.3d at 416. This Court affirmed, concluding that the district court did not abuse its discretion when it denied specific performance. *Id.* ¶ 42, 38 P.3d at 417. The Court first explained that specific performance was not warranted because "the sellers[] fail[ed] to show damages were an inadequate or impractical remedy or there were special equities which commanded such relief." *Id.* ¶¶ 37–38, 38 P.3d at 416. Equally important to the Court's resolution of the specific performance issue was its conclusion that the contract was ambiguous. *Id.* ¶ 39, 38 P.3d at 416–17. The agreed upon terms were uncertain and therefore, specific performance was not an appropriate remedy. *Id.*

[¶39] Mr. Davis argues *Dewey* stands for the proposition that specific performance is available only when the party seeking the remedy establishes that legal damages are inadequate and impractical. Harmony, on the other hand, contends that *Dewey* did not implicitly overrule *Keystone Sheep*, and that regardless of whether the party seeking specific performance is the buyer or the seller of real property, damages are presumed inadequate if the contract is for the sale of real property.

[¶40] A careful reading of both cases leads to two significant conclusions. First, the *Dewey* Court's decision on the availability of specific performance does not apply here given the facts of this case. While the *Dewey* Court discussed the presumption that damages are inadequate in land sales contracts, it did not analyze this presumption. The jury had concluded that the contract was ambiguous, *Dewey*, ¶ 38, 38 P.3d at 416, and because the contract was ambiguous, specific performance was not available. *Id.* ¶ 39, 38 P.3d at 417. Second, *Keystone Sheep* recognized the presumption that money damages are insufficient in contracts for the sale of land where the buyer seeks specific performance. *Keystone Sheep*, 72 Wyo. at 202, 263 P.2d at 142–43. The question whether the presumption applies in cases where the seller seeks specific performance has not been resolved in Wyoming.

[¶41] Harmony urges the adoption of the rule articulated in the Restatement of Contracts:

> § 360 Specific Enforcement of Contracts for the Transfer of
> Land

Damages are regarded as an inadequate remedy for the breach of a promise

> (a) to transfer any interest in specific land, or
> (b) to buy and pay for such an interest, so long as the transfer has not yet been made; and specific enforcement will be decreed, subject to the rules stated in §§ 359–380.

Restatement of Contracts § 360 (Am. Law Inst. 1932, update 2019).  The comment to this section explains that a seller's "remedy in damages is not an adequate one."  *Id.* at cmt. c.  A seller's damages at law "are usually measured by the contract price less the value of the land retained; but the land is a commodity that has no established market value, and the [seller] may not be able to prove what his real harm will be."  *Id.*  "Even if [the seller] can make this proof, the land may not be immediately convertible into money, and [the seller] is deprived of the power to make new investments."  *Id.*  Further, "[p]rior to getting a judgment, the existence of the contract, even though broken by the [buyer], operates as a clog on salability, so that it may not be possible to find a purchaser at any fair price."  *Id.*  Finally, "the fact that specific performance is available to the [buyer] is of some weight, because of the rule as to mutuality of remedy."  *Id.*

[¶42] We have cited this provision on numerous occasions, but we have never specifically adopted its precepts and decline to do so now.  *See, e.g.*, *Davidson*, ¶ 33, 247 P.3d at 76; *Ekberg*, ¶ 22, 76 P.3d at 1257; and *Williams*, 720 P.2d at 892–93.  However, the factors set forth in the comment are relevant to our consideration of specific performance as an equitable remedy.

[¶43] Specific performance may be awarded at the discretion of the court, depending on the facts and equities in each case.  *See Reed*, 553 P.2d at 1037.  Before awarding specific performance, courts should consider a variety of factors, depending on the case.  Those factors could include the adequacy of consideration;[5] whether the specific performance remedy would impose a hardship on one party that outweighs the benefits to the other;

---

[5] If the agreed price is substantially lower than fair market value, specific performance may not be an appropriate remedy.  However, even inadequate consideration may not always weigh against specific performance.  For instance, if

> the seller was willing to accept a lower price for the property because of a desire to sell quickly as a means of obtaining capital, specific performance may be granted.  Furthermore, an increase in value from the time the contract is made to the time of trial is not a sufficient ground to deny specific performance.

19 Am. Jur. 3d *Proof of Facts* § 12.

whether the remedy would place an undue hardship on a third party; whether specific performance is impossible; whether either party has unclean hands or has engaged in bad faith; whether the contract contains liquidated damages or specific performance clauses; and whether the contract provides that time is of the essence. *See* 19 Am. Jur. 3d *Proof of Facts* §§ 12–15, at 564–70 (1993); 25 Samuel Williston, *Treatise on the Law of Contracts* §§ 67:73–67:78 (Richard A. Lord ed., 4th ed. 2019).

[¶44] Here, setting aside the district court's conclusion that inadequacy of legal damages is not required in contracts for the sale of land, the district court found "strong[] support [for] an equitable remedy in lieu of money damages because **a monetary award would be inadequate or impractical**." (Emphasis added.) This finding is supported by an application of the factors set forth above to the facts of this case.

[¶45] In evaluating the adequacy of consideration, the contract price for Mr. Davis's lot was $1,578,319.83. Harmony invested $1,850,000 in improvements required by the contract. After Mr. Davis withdrew from the contract, Harmony attempted to market the lot, albeit for a greater price. The record shows that despite its efforts to market the property, Harmony has not received a single offer to purchase Mr. Davis's lot. Ms. Burridge testified that since Harmony and Mr. Davis contracted for the sale of the lot, times have changed and "[t]here's not as many buyers out there." From this record, we cannot say that the consideration set forth in the contract is inadequate or that the lot is worth more than it was at the outset. If Harmony was willing to accept the contract price for the property as a means of obtaining capital, specific performance may be granted. *See* 19 Am. Jur. 3d *Proof of Facts* §12, at 564–65.

[¶46] The second factor, whether the specific performance remedy would impose a hardship on one party that outweighs the benefits to the other, weighs in favor of Harmony. Requiring Mr. Davis to comply with the contract would not cause him undue hardship and it would benefit Harmony. Mr. Davis receives the property he bargained for with the improvements the parties negotiated. The evidence established that, relying on the contract, Harmony performed work on Mr. Davis's lot and the subdivision's infrastructure that it could have delayed absent Mr. Davis's contract. *See supra* ¶¶ 21–22 (listing the contract's requirements and the trial court's findings on what Harmony had done). Mr. Davis was an anchor tenant who was to be a "catalyst" for the subdivision as a whole; potential purchasers walked away when they learned that Mr. Davis would not be constructing his health club.

[¶47] The third factor, whether the remedy would place an undue hardship on a third party, is not relevant here. The fourth factor would require analysis of whether either party has unclean hands or engaged in bad faith. The district court made no finding of bad faith or unclean hands. Finally, courts consider whether the contract contains liquidated damages or specific performance clauses and whether the contract provides that time is of the essence. This contract contained a provision contemplating specific

performance and stated that time was of the essence. *See supra* ¶ 4. "[T]he inclusion of the clause shows that specific performance was within contemplation of the parties." *Fazzio v. Mason*, 249 P.3d 390, 397 (Idaho 2011). Mr. Davis agreed to the inclusion of both clauses. The district court did not abuse its discretion when it awarded specific performance.

## 2. Future Negotiations Regarding a Material Term

[¶48] Mr. Davis argues that specific performance was not available because the parties contemplated future negotiations regarding a material term. Mr. Davis contends that because Cordial Drive was eliminated from the original plat, the execution of a shared use agreement was required before the parties could close. When Cordial Drive was eliminated from the plat, Mr. Davis's lot size increased by half the width of the street. The revised plan necessitated the March 2015 addendum to the contract which reflected the changes made to the plat.

[¶49] We do not agree that the elimination of Cordial Drive required further negotiations of a material term to the contract. The contract provided:

> 9. Buyer understands that the proposed Cordial Drive may be constructed at a later date, or may be eliminated from final plat.

The contract also stated that "[a]ll prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller or Brokers to modify the terms and conditions of this Contract."

[¶50] The elimination of Cordial Drive was anticipated in the contract. It did not create a new "material term" that needed to be addressed before specific performance could be awarded. *See Snelling v. Roman*, 2007 WY 49, ¶¶ 17, 26, 154 P.3d 341, 347, 349 (Wyo. 2007) (length of road was not material term in road construction contract).

## 3. Municipal Code Violations

[¶51] Mr. Davis argues the contract was unenforceable because it violated Casper's Municipal Code. Casper's Municipal Code 16.12.080 provides:

> No person shall transfer, sell, agree to sell or negotiate to sell any land by reference to or by the use of a plat of a subdivision, before such plat has been approved and recorded in the manner prescribed in this title. . . .

Casper, Wyo., Code § 16.12.080 (1984). The code classifies violations of this provision as misdemeanors and establishes a "fine of not more than seven hundred fifty dollars" as penalty for violations. Casper, Wyo., Code § 1.28.010(A)–(B) (1996). The City of Casper has not cited Harmony for a code violation.

[¶52] Mr. Davis relies on cases from other jurisdictions that have determined contracts for the sale of real estate violating similar municipal ordinances are unenforceable. *See Kilgore Dev., Inc. v. Woodland Place, LLC*, 47 So. 3d 267 (Ala. Civ. App. 2009); *Sixells, LLC v. Cannery Bus. Park*, 88 Cal. Rptr. 3d 235 (Ct. App. 2008); *In re Los Angeles Land & Invs., Ltd.*, 282 F. Supp. 448 (D. Haw. 1968); *Taunt v. Moegle*, 75 N.W.2d 48 (Mich. 1956). Those cases are distinguishable. In *Taunt*, the plaintiffs possessed a right of statutory rescission due to the real estate contract's violation of the Michigan Plat Act. *Taunt*, 75 N.W.2d at 50. Similarly, the Alabama Code at issue in *Kilgore* specifically provided for the enjoinment of a sale or agreement in violation of the statute prohibiting the sale of property prior to the county engineer's approval. *Kilgore*, 47 So. 3d at 269–70. And, in *Sixells*, the Subdivision Map Act, which was relied upon by the court to hold the contract void, *Sixells*, 88 Cal. Rptr. 3d at 239, provided any deed, sale, or contract to sell violating the act was "voidable at the sole option of the grantee, buyer or person contracting to purchase." *See* Cal. Gov't Code § 66499.32(a) (West 1975). In *Los Angeles Land & Investments*, the court cited specific code provisions indicating the contracts at issue were void or voidable but concluded that amendments to the contracts made them securities which violated federal securities laws. *Los Angeles Land & Invs.*, 282 F. Supp. at 452.

[¶53] The Casper municipal code does not contain a penalty that voids contracts that are in violation of the provision, nor does it provide a remedy of rescission or injunction. The Casper City Council could have incorporated these penalties, and it did not. We decline to add such a provision judicially. *See Delcon Partners LLC v. Wyoming Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019) ("This Court is not at liberty to add words to a statute that the legislature chose to omit." (citations omitted)); *see also Fritts v. Palmer*, 132 U.S. 282, 288–89, 10 S.Ct. 93, 95, 33 L.Ed. 317 (1889) (declining to invalidate a real estate conveyance in violation of the Colorado Constitution and state statute where the legislature specified the penalty for violation thereof and declined to declare conveyances in violation of the statute void); *Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 217 S.E.2d 551, 560 (N.C. 1975) (refusing to invalidate a conveyance of real property where the conveyance violated a municipal ordinance similar to the one at issue in this case and the ordinance provided that the penalty was a misdemeanor, and concluding that "the legislative bodies dealt with the matter completely and did not intend to invalidate conveyances of real property because of failure to follow the provisions of this penal legislation."); *Gilmore v. Hershaw*, 521 P.2d 934, 935–36 (Wash. 1974) (holding that where the chapter "did not provide a remedy of rescission to the vendee of unplatted land," the real estate contract should not be rescinded even though it violated city ordinance). We decline to void the contract based

19

upon the alleged violation of Casper's municipal code.  *See Battlefield, Inc. v. Neely*, 656 P.2d 1154, 1157 (Wyo. 1983) (refusing to void contract based upon technical violations of real estate statutes).

## *CONCLUSION*

[¶54]  While the contract fails to comply with the statute of frauds, it is enforceable under the doctrine of partial performance.  The district court did not abuse its discretion when it ordered Mr. Davis to specifically perform.  We affirm.