# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 139

### OCTOBER TERM, A.D. 2022

__November 9, 2022__

JIMMY and JENNIFER BOWMAN,

Appellants
(Respondents),

v.

S-22-0070

LARRY and PEGGY STUDY,

Appellees
(Petitioners).

*Appeal from the District Court of Campbell County*
The Honorable Stuart S. Healy III, Judge

*Representing Appellants:*
    Stacy M. Kirven, Kirven Law, LLC, Sheridan, Wyoming.

*Representing Appellees:*
    No appearance.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Larry and Peggy Study (Grandparents collectively, or Grandfather and Grandmother individually) filed an action against Jimmy and Jennifer Bowman (Parents collectively, or Father and Mother individually) for visitation with their grandchildren. The district court held a trial and granted Grandparents' petition. We reverse because the district court violated Parents' fundamental constitutional right to raise their children as they see fit.[1]

## ISSUES

[¶2]   We restate the issues for review as:

> 1.     Did the district court err by ordering grandparent visitation without properly protecting Parents' due process rights?

> 2.     Did Grandparents meet their burden of proving they were entitled to court-ordered visitation?

## FACTS

[¶3]   Parents have four children, three of whom were minors ranging in age from 13 to 16 years at the time of trial – CDB, KGB, and CHB (Children). The adult child was a student at the University of Wyoming. Over the years, Grandparents and Children had regular contact and Grandparents occasionally assisted Parents with childcare.

[¶4]   However, on August 3, 2019, Mother texted Grandmother stating that, because of Grandparents' behavior, Parents felt it was in their family's best interest to "dial back" contact between Grandparents and Children. Parents were especially concerned about Grandfather's treatment of KGB. Grandfather and KGB shared an interest in horses and rodeoing, and he purchased horses for KGB to use for rodeo events, kept them at his place, and transported KGB and the horses to rodeos. When Grandfather thought KGB was not putting forth sufficient effort with the horses or rodeo activities, he would threaten to sell the horses. Parents felt Grandfather's behavior amounted to emotional abuse of KGB.

[¶5]   While Parents believed Grandfather put too much pressure on KGB over rodeo, they also believed Grandparents generally favored KGB over the other Children by giving her more attention and gifts. The unequal treatment caused animosity between KGB and the other Children. Mother ended her initial text to Grandmother by saying: "[W]e would like our kids to experience supportive grandparents who support all of them, not just the one

---

[1] Grandparents did not file a brief on appeal.

1

that['s] winning or has the same interest. We think grandparents are important and hope we can figure out how that can happen in the future."

[¶6]    Parents told Grandparents that, before they could see Children, Grandparents had to make arrangements with Parents because it was Parents' "job to make sure [Children were] safe and not being told things that [were] inappropriate or undermining." There was conflicting evidence about whether Grandparents were aware Parents had prohibited direct communication between Grandparents and Children. However, it is noteworthy that Grandmother testified she began using Snapchat to exchange messages with Children because the conversations would "disappear" from the application.[2] Mother testified Parents allowed Grandparents to have supervised visitation with Children, but Grandparents did not cooperate with the terms of visitation.

[¶7]    An incident in December 2020 prompted Grandparents to file this action under Wyo. Stat. Ann. § 20-7-101(a) (LexisNexis 2021) to establish visitation with Children. The adult child took CDB and KGB to Grandparents' house because Father had slammed a car door on CDB's foot and ankle during an argument. CDB told Grandmother that Father had intentionally hurt him, but Grandmother did not believe Father would do that. The adult child told Grandparents they were Children's support system and Parents took away Children's security when they prohibited contact with Grandparents.

[¶8]    After holding a trial on Grandparents' visitation petition, the district court found "no evidence Grandparents present[ed] any physical or emotional danger to . . . [C]hildren." The court ruled Children "need to have visitation and contact with Grandparents" and awarded Grandparents the right to open and unmonitored contact with Children and monthly and summer visitation. Parents filed a motion to alter or amend the judgment under Wyoming Rule of Civil Procedure (W.R.C.P.) 59(e), asserting the district court's order violated their constitutional right to raise their children as they see fit. The district court denied Parents' motion, and they appealed.

## DISCUSSION

[¶9]    The district court conducted a bench trial on Grandparents' visitation action; consequently, we review its factual findings for clear error. *PNS Stores, Inc. v. Capital City Props., LLC,* 2022 WY 101, ¶ 19, 515 P.3d 606, 611 (Wyo. 2022) (citing *Davis v. Harmony Dev., LLC*, 2020 WY 39, ¶ 31, 460 P.3d 230, 240 (Wyo. 2020), and *Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250, 1253 (Wyo. 2003)).

---

[2] Snapchat is a computer application designed for users' messages to "automatically delete" after they "[have] been viewed or have expired." https://www.ca1.uscourts.gov/sites/ca1/files/citations/when-are-snaps-chats-deleted.pdf

> While the factual findings of a judge are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. . . . A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.

*TEP Rocky Mountain LLC v. Record TJ Ranch Ltd. P'ship,* 2022 WY 105, ¶ 37, 516 P.3d 459, 472 (Wyo. 2022) (quoting *Shriners Hosps. For Children v. First N. Bank of Wyo.,* 2016 WY 51, ¶ 27, 373 P.3d 392, 403 (Wyo. 2016) (quotation marks, brackets and citations omitted)). We review the district court's conclusions of law de novo. *PNS Stores,* ¶ 19, 515 P.3d at 611 (citation omitted).

### 1. Legal Principles of Grandparent Visitation

[¶10] We addressed the legal principles pertaining to grandparent visitation in *Ailport v. Ailport,* 2022 WY 43, 507 P.3d 427 (Wyo. 2022). Any analysis of state-mandated grandparent visitation must start with the recognition that "parents have a fundamental due process right to raise their children as they see fit and make decisions regarding their associations without interference from the government." *Id.*, ¶ 8, 507 P.3d at 433 (citing *Michael v. Hertzler,* 900 P.2d 1144, 1148 (Wyo. 1995)). In general, grandparent visitation statutes interfere with parents' fundamental right to rear their children and must, therefore, pass strict scrutiny review to survive a constitutional due process challenge. *Id.,* ¶ 27, 507 P.3d at 438 (citing *Michael,* 900 P.2d at 1146-47). A statute is constitutional under "strict scrutiny only if it is necessary to achieve a compelling state interest and the method of protecting the state's interest is the least intrusive necessary to accomplish the goal." *Id.* (citing *Vaughn v. State,* 2017 WY 29, ¶ 26, 391 P.3d 1086, 1095 (Wyo. 2017), *Reiter v. State,* 2001 WY 116, ¶ 20, 36 P.3d 586, 592-93 (Wyo. 2001), and *Michael,* 900 P.2d at 1147).

[¶11] As written, § 20-7-101(a) confers grandparents a broad right to bring an action against parents to establish visitation with their grandchildren. It states, in relevant part:

> A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child. If the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are

3

not substantially impaired, the court shall grant reasonable visitation rights to the grandparent.

Section 20-7-101(a).

[¶12] We recognized in *Ailport* that § 20-7-101(a)'s requirement that court-ordered grandparent visitation not substantially impair the rights of the parents must be interpreted to protect parents' fundamental constitutional right to raise their children as they see fit. *Id.*, ¶¶ 29-30, 507 P.3d at 439 (citing *Moriarty v. Bradt,* 827 A.2d 203, 218 (N.J. 2003)) (other citations omitted). The United States Supreme Court set out the scope of parents' due process rights in grandparent visitation actions in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). We summarized three key points from *Troxel* in *Ailport.* "First, 'the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized' under the due process clause of the United States Constitution." *Ailport,* ¶ 12, 507 P.3d at 434 (quoting *Troxel,* 530 U.S. at 65, 120 S.Ct. at 2060) (other citations omitted). "Second, a simple weighing of the best interests of the children to establish grandparent visitation is insufficient to protect parents' liberty interest in rearing their children." *Id.,* ¶ 13, 507 P.3d at 434 (citing *Troxel,* 530 U.S. at 67, 120 S.Ct. at 2061) (other citations omitted). Finally, "fit parents are presumed to act in their children's best interests and their decisions regarding visitation with grandparents are entitled to 'special weight' or deference." *Id.,* ¶ 14, 507 P.3d at 434 (citing *Troxel,* 530 U.S. at 68-69, 120 S.Ct. at 2061-62) (other citations omitted).

[¶13] To interpret § 20-7-101(a) consistent with these constitutional principles, the grandparents must demonstrate the state has a compelling reason to interfere with the parents' rights, which requires proof by clear and convincing evidence "the parents are unfit or their visitation decision is harmful to the child[ren]. This threshold requirement ensures the parents' decision is given 'special weight' in accordance with *Troxel's* directive." *Id.*, ¶ 30, 507 P.3d at 439 (citing *Troxel,* 530 U.S. at 68-69, 120 S.Ct. at 2061-62, and *Moriarty,* 827 A.2d at 218) (other citations omitted). Only after the grandparents have shown the parents are unfit or their visitation decision is harmful to the children will the presumption in favor of parental decision-making be overcome to allow the court to consider what visitation would serve the children's best interests. *Ailport,* ¶ 21, 507 P.3d at 437.

[¶14] Representative "examples of evidence which might, under the specific circumstances of a given case, establish harm, includ[e] when a surviving parent restricts a child's contact with grandparents after the death of a parent, the breakup of the child's home through divorce or separation, and/or the termination of a long-standing relationship between the grandparents and the child." *Id.,* ¶ 20, 507 P.3d at 436 (citing *Moriarty,* 827 A.2d at 223-24). Another factor in determining whether the parents' visitation decision is harmful to the children is whether the parents terminated all visitation between the grandparents and the children. *Id.,* ¶ 42, 507 P.3d at 441-42 ("When viewed within the

4

paradigm we have adopted to protect parents' fundamental right to rear their children, the fact [p]arents had not denied visitation to [g]randparents was a valid consideration in determining whether [c]hildren were harmed by [p]arents' visitation decisions." (citing *Moriarty,* 827 A.2d at 224)).

[¶15]   We realize the district court did not have the benefit of the *Ailport* decision when it ordered visitation; however, Parents repeatedly drew the court's attention to *Troxel* and their concerns with applying § 20-7-101(a) in a manner which did not protect their fundamental rights.  Yet, without addressing *Troxel* or its legal principles, the district court granted Grandparents' request for visitation.  Relying on *Michael*, the court concluded the grandparent visitation statute satisfied strict scrutiny.   The court apparently did not recognize that *Michael* predated *Troxel* or that it involved an earlier version of § 20-7-101(a) which offered greater protection to parents than the current version of the statute. At that time, the statute required proof that (1) the grandparent's child, who was the parent of the affected children, had died or divorced the other parent and the person with custody had refused reasonable visitation; or (2) an unmarried minor grandchild had resided with the grandparents for more than six months before being returned to the parents' custody and the grandparents' requests for reasonable visitation had been refused.  *Michael,* 900 P.2d at 1151 (discussing Wyo. Stat. Ann. § 20-7-101(a)(i), (ii) (1994)).

[¶16]   The district court ignored that, under *Troxel,* fit parents' decisions about grandparent visitation are presumed to be in the children's best interests.  *Troxel,* 530 U.S. at 68-69, 120 S.Ct. at 2061.  It also did not require Grandparents to show Parents were unfit or their visitation decision harmed Children in order to overcome the presumption.  *Ailport,* ¶ 18, 507 P.3d at 436 (citing *Moriarty,* 827 A.2d at 218-19).  In fact, the district court effectively shifted the burden to Parents to show grandparent visitation would be harmful to Children when it found "no evidence Grandparents present any physical or emotional danger to [Children]."   The legal principles applied by the district court did not protect Parents' fundamental right to guide the upbringing of Children.

## 2. *Application of Correct Legal Principles to Grandparents' Visitation Action*

[¶17]   When the correct legal standard is applied, it is obvious Grandparents did not overcome the presumption in favor of Parents' visitation decision.  The district court did not make any findings regarding the fitness of Parents.  We have not defined fitness in the context of grandparent visitation; however, the United States Supreme Court in *Troxel* provided a general definition of a fit parent as one who "adequately cares for his or her children." *Troxel,* 530 U.S. at 68, 120 S.Ct. at 2061. *See also, In re GAC,* 2017 WY 65, ¶ 29, 396 P.3d 411, 418 (Wyo. 2017) (defining "fitness" in actions to terminate parental rights actions as "the parent's 'ability to meet the ongoing physical, mental and emotional needs of the child'" (quoting *RLA v. State, Dep't of Family Servs. (In re LA)*, 2009 WY 109, ¶ 14, 215 P.3d 266, 269 (Wyo. 2009))).  We have reviewed the record and found no allegation by Grandparents that Parents were unfit.  The only evidence which could be

interpreted as touching on Parents' fitness was the testimony about the December 2020 incident where Father slammed a car door on CDB's foot and ankle during an argument. However, despite telling Grandmother at the time of the incident that Father had intentionally hurt him, CDB testified at the trial that he did not know if Father was aware his foot was in the door; Grandmother testified she did not believe Father intended to hurt the child; and the district court found the injury was accidental. Even giving Grandparents' evidence all reasonable inferences, they did not prove by clear and convincing evidence Parents were unfit.

[¶18] Grandparents also failed to present clear and convincing evidence Parents' visitation decision was harmful to Children. Parents were still living and remained married to one another at the time of trial, and Grandparents presented no evidence showing any Children had lived with them. *See Ailport,* ¶ 20, 507 P.3d at 436-37 (citing *Moriarty,* 827 A.2d at 223-24, for examples of evidence which could show children are harmed by their parents' grandparent visitation decision). *See also, Michael,* 900 P.2d at 1151 (discussing the procedural safeguards incorporated in the 1994 version of § 20-7-101(a) to protect parents' rights in grandparent visitation actions). Furthermore, Parents did not completely deny visitation to Grandparents. *See Ailport,* ¶¶ 41-42, 507 P.3d at 441-42 (remarking on the grandparents' failure to show the parents denied them visitation with the grandchildren).

[¶19] Mother informed Grandparents they needed to respect Parents' decisions about Children, Grandparents needed to communicate with Children through Parents, and visitation had to be supervised. Grandparents did not, in their proposed findings of fact and conclusions of law, direct the district court to any evidence showing they attempted to comply with Parents' wishes regarding visitation with Children. Likewise, the district court's order contains no findings that Grandparents made any effort to establish contact with Grandchildren under Parents' terms. Even assuming Grandparents' evidence is true and giving it all favorable inferences, Grandparents did not demonstrate Parents' decision to limit contact between Grandparents and Children was harmful to Children. Because Grandparents failed to show by clear and convincing evidence either that Parents were unfit or that their visitation decision was harmful to Children, the state did not have a compelling reason to interfere with Parents' decision and the district court clearly erred by granting Grandparents' petition.

## CONCLUSION

[¶20] The district court did not adequately protect Parents' fundamental constitutional right to rear their Children as they see fit when it ordered grandparent visitation. We reverse and remand for entry of an order denying Grandparents' § 20-7-101(a) visitation petition.